727 So.2d 748 (1998)
Lee Joseph BLANTON a/k/a Hosea Blanton, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00439COA.
Court of Appeals of Mississippi.
December 8, 1998.
Rehearing Denied February 23, 1999.
*749 Pamela A. Ferrington, Natchez, for Appellant.
Office of the Attorney General by Charles W. Maris Jr., for Appellee.
Before BRIDGES, C.J., and HINKEBEIN and KING, JJ.
HINKEBEIN, J., for the Court:
¶ 1. Leo Joseph Blanton (Blanton) was convicted in the Circuit Court of Adams County of selling cocaine. Blanton was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections and pay a fine of $5000. Aggrieved by his conviction, he appeals to this Court on the following grounds:
I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE IN ORDER TO INVESTIGATE THE INFORMATION OBTAINED BY DEFENSE COUNSEL ON THE MORNING OF THE TRIAL.
II. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT BASED ON A CHAIN OF CUSTODY VIOLATION AS TO THE CONTROLLED SUBSTANCE ADMITTED INTO EVIDENCE.
¶ 2. Holding these assignments of error to be without merit, we affirm the judgment of the circuit court.

FACTS
¶ 3. On July 3, 1996, the Metro Narcotics Unit of Adams County was conducting an operation aimed at street level drug dealers in Natchez, Mississippi. Taking part in the operation was John Delaughter (Delaughter), a confidential informant and private citizen working with narcotics agents. Delaughter, an admitted former drug addict, was paid anywhere from forty to eighty dollars for each case he was involved in. Delaughter had no criminal record, and there were no pending charges against him. On the day in question, Delaughter's job was to purchase drugs while the illegal transactions were being recorded on videotape. The record reveals the procedure followed by narcotics agents prior to sending Delaughter out to make the drug buys. The agents first searched Delaughter and his pickup truck for drugs, weapons, and money. A concealed video camera was then installed in Delaughter's truck to record the drug purchases. Delaughter also wore a body wire so that Narcotics officers could monitor the drug transactions as they occurred. After agents briefed Delaughter on his assignment, they supplied him with money with which to purchase the illegal drugs.
¶ 4. On the date in question, Delaughter was instructed to drive along Woodville Road in Natchez through a section known as "The Field". Delaughter testified that as he was driving, he was waved over by Blanton who was sitting in a car parked on the side of the road. According to Delaughter, and as shown by the videotape later played to the jury, Blanton approached the pick-up truck and asked Delaughter what he wanted. Delaughter told Blanton he wanted "a twenty", and Blanton then produced a single rock of crack cocaine in exchange for a twenty dollar bill. Delaughter testified that he placed the rock of crack cocaine on the console of his truck. As he drove away, he relayed Blanton's physical description and license plate number to narcotics agents over the body wire he was wearing. After the purchase, the agents began following Delaughter in their vehicle and rendezvoused with him at a different location. Delaughter testified that Agent Dale Cowan (Cowan) retrieved the crack cocaine and placed it in a bag. The videotape of the transaction was also removed and replaced with a new blank cassette. At trial, Delaughter identified Blanton as the person who had sold him the cocaine and also stated that the videotape fairly and accurately depicted the transaction. Cowan also testified that the videotape of the drug *750 sale accurately reflected what agents heard of the transaction over the body wire worn by Delaughter.
¶ 5. Cowan's testimony essentially reiterated most of Delaughter's version of events, but also included information as to the handling of the cocaine after it was retrieved from Delaughter. While Cowan could not recall whether he or one of the other officers actually removed the cocaine from Delaughter's truck, he stated that once it was in his possession he placed it in a heat sealed evidence bag, initialed the bag, and placed it in an evidence locker. The cocaine remained there until it was received by the Mississippi Crime Laboratory two weeks later. Monica Ardis, a forensic scientist with the crime laboratory, testified that she removed the evidence from the sealed bag and, after performing a number of tests, concluded it was cocaine.
¶ 6. Prior to voir dire, Blanton made a motion for a continuance, claiming that in responding to his request for discovery the State failed to supply a witness list containing Delaughter's name and address as required by URCCC 9.04(A)(1). The State contended that Blanton had been supplied the name of Delaughter and other likely witnesses through the indictment, as well as the police reports and statements turned over to the defense. The State also maintained that due to Delaughter's involvement in other ongoing drug cases they were not required to give his address. They stated they were at all times willing to make Delaughter available to be interviewed by the defense but that no request came until the day of the trial. The trial court ruled that it was clear from the police reports that Delaughter would be called as a witness, but allowed Delaughter to be interviewed by the defense prior to his testimony during a lunch break. After the break, Blanton again requested a continuance to investigate the information obtained from Delaughter during the interview. The trial court denied the motion, finding there was no evidence of unfair surprise or undue prejudice that would justify a continuance.
¶ 7. At the conclusion of the State's case, Blanton moved for a directed verdict on the basis that the State had failed to prove by credible evidence all elements of the crime. Blanton also argued that the State failed to prove a chain of custody of the substance later tested as cocaine. The trial court denied the motion for directed verdict, and Blanton rested his case. After hearing the evidence, the jury returned a verdict of guilty after approximately thirty minutes of deliberation. Blanton filed a motion for a new trial which was denied by the trial court. From the order denying his motion for a new trial, Blanton has perfected this appeal.

DISCUSSION

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE IN ORDER TO INVESTIGATE THE INFORMATION OBTAINED BY DEFENSE COUNSEL ON THE MORNING OF THE TRIAL.
¶ 8. Blanton argues that the State deliberately failed to disclose Delaughter's location in discovery, and as a result, the defense was unable to interview this crucial witness until the morning of the trial. Blanton contends that the trial court erred in failing to grant a continuance so that the defense could investigate information obtained from the interview with Delaughter. The State contends that Blanton had Delaughter's name for months, yet made no effort to arrange a meeting until the day of the trial. The State characterizes Blanton's inaction as "sandbagging of the rankest sort". The State further argues that Blanton failed to demonstrate any prejudice, and thus the trial court did not abuse discretion in denying a continuance. We agree with the State.
¶ 9. Whether a continuance should be granted or denied is within the sound discretion of the trial court. Johnson v. State, 631 So.2d 185, 189 (Miss.1994); Wallace v. State, 607 So.2d 1184, 1190 (Miss. 1992); Morris v. State, 595 So.2d 840, 844 (Miss.1991). Only when manifest injustice appears to have resulted from the decision to deny the continuance will the Mississippi Supreme Court reverse on that basis. Johnson, *751 631 So.2d at 189; Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993).
¶ 10. In determining whether there was an abuse of discretion or manifest injustice in denying Blanton's motion for continuance, we need to determine if the omission of Delaughter's address constituted unfair surprise or worked to his prejudice. The degree of pre-trial disclosure required of the State is addressed by Rule 9.04 of the Mississippi Uniform Rules of Circuit and County Court Practice, which reads in part:
(A) Subject to the exceptions of subsection "B", below, the prosecution must disclose to each defendant or to defendant's attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and photograph upon written request and without necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution: (A)(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness;
URCCC 9.04(A)(1). Under the facts presented in the record, Delaughter's name was repeatedly disclosed in the documents submitted by the State to Blanton. Among these was Delaughter's handwritten narrative account of the drug sale. There is no question that given the facts surrounding the cocaine sale, Delaughter would be the chief witness against Blanton. In support of his argument, Blanton cites a number of cases where the supreme court reversed on the grounds that the trial court erroneously denied a continuance when the State failed to supply the address or location of a confidential informant. Gowdy v. State, 592 So.2d 29, 36-7 (Miss.1991); Turner v. State, 501 So.2d 350, 352-3 (Miss.1987). In Gowdy, the defense had voiced complaints before, during, and after trial as to the State's apparent inability to locate the confidential informant. Gowdy, 592 So.2d at 33. In Turner, the State failed to provide the name or address of the confidential informant until the trial was actually underway, and the defense first learned of the person's existence. Turner, 501 So.2d at 351. These cases can be distinguished from the case sub judice in that Blanton knew of the identity of Delaughter and made no effort until the day of the trial to secure an interview. In addition, the record reveals no prosecutorial bad faith on the part of the State or any unwillingness to produce Delaughter for a pre-trial interview. A case actually cited by Blanton goes precisely to the issue of inaction by the defense. Bosarge v. State, 594 So.2d 1143, 1148 (Miss. 1991). In Bosarge, the defendants received a continuance after requesting the name and address of the informant and discovering that he could not be located. Id. at 1145. However, after doing nothing to locate the informant for six months, the defendants again sought a continuance which was denied by the trial court. Id. In affirming the trial court's decision, the Mississippi Supreme Court stated that "the record reflects substantial defense dilatoriness, such that we may not say the Circuit Court abused its discretion when it denied the motion for a continuance." Id. at 1148. In making no effort to question Delaughter until the day of the trial, despite full knowledge of his role in the case, Blanton displayed the dilatoriness the supreme court spoke of in Bosarge. Id.
¶ 11. While URCCC 9.04 clearly requires the address or location of a witness to be provided, this criteria is tempered and limited by URCCC 9.04(B):
(B) The court may limit or deny disclosure authorized by subsection "A" if it finds that there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment, resulting from such disclosure, which outweighs any usefulness of the disclosure to the defense attorneys.
URCCC 9.04(B). The record reveals that at the time of Blanton's trial, Delaughter was involved in a number of drug cases in an undercover capacity, and the State requested his address be kept secret to maintain his safety. The State also made it clear that *752 Delaughter would have been made available for a defense interview at any time. We find no abuse of discretion in the trial court's acknowledgment of the protective motivation behind the State's exclusion of Delaughter's address from discovery. Blanton's argument that the defense had no idea on how to locate Delaughter is clearly specious considering that absolutely no effort to speak to him was made until the day of trial.
¶ 12. The purpose of pre-trial discovery is to avoid ambush or unfair surprise to either party at trial. Frierson v. State, 606 So.2d 604, 607 (Miss.1992) (citing Robinson v. State, 508 So.2d 1067, 1070 (Miss.1987)); Holland v. State, 587 So.2d 848, 866-67 (Miss.1991). Blanton has not shown that a lack of discovery worked to his detriment. When given the opportunity to interview Delaughter after voir dire, Blanton acknowledged that Delaughter had been quite open to his questioning, but requested a continuance to investigate the information. While alluding generally to questions of Delaughter's credibility, he gave no specifics as to how Delaughter's account of events might have differed from his earlier written account or the version that was later conveyed to the jury on videotape. Mississippi statutory law states that in seeking a continuance, a party must make a factual showing of what he expects to prove by the absent witness or document and must also prove due diligence in seeking to procure the witness or document. Miss.Code Ann. § 99-15-29 (Rev. 1994). In the case sub judice, Blanton failed to make the factual showing and thus demonstrated no prejudice to his case by the denial of the continuance. As discussed earlier, Blanton is also sorely lacking as to the diligence required by the statute. In addition, "[a] denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom." Miss.Code Ann. § 99-15-29 (Rev.1994). In light of the overwhelming and incontrovertible evidence of his guilt found in the record, we find no such injustice. We also find that the trial court acted well within its discretion in denying his motion for continuance. As such we find this assignment of error to be without merit.

II. THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT BASED ON A CHAIN OF CUSTODY VIOLATION AS TO THE CONTROLLED SUBSTANCE ADMITTED INTO EVIDENCE.
¶ 13. Blanton contends that the chain of custody was broken as to the cocaine that was admitted into evidence. According to Blanton, these alleged breaks are shown by evidence that 1) Delaughter was not under direct supervision following the drug buy, 2) that Agent Cowan could not remember exactly who removed the cocaine from Delaughter's vehicle, and 3) that the officer who transported the cocaine to the crime lab did not testify. As such, he argues that the trial court committed error in denying his motion for a directed verdict. The State responds that Blanton failed to object to the cocaine's admission into evidence and is procedurally barred from complaining about any alleged break in the chain of custody. In addition, the State asserts there was absolutely no evidence that the evidence had been tampered with, and the trial court was within its discretion in denying Blanton's motion. We agree with the State's second contention.
¶ 14. The Mississippi Supreme Court has held "that the test with respect to whether there has been a break in the chain of custody of evidence is whether there is an indication of probable tampering." Nalls v. State, 651 So.2d 1074, 1077 (Miss.1995) (citing Nix v. State, 276 So.2d 652, 653 (Miss. 1973)). The supreme court made it clear in Nalls that "matters regarding the chain of custody are largely left to the discretion of the trial judge and will not be disturbed unless there appears to be an abuse of discretion." Nalls, 651 So.2d at 1077. In examining the record, we find no indication that the cocaine entered into evidence had been tampered with, and as such, there was no break in the chain of custody. Blanton's first alleged break in the chain of custody was the period between when Delaughter purchased the cocaine and when it was actually received by the agents involved in the drug operation. Testimony reveals that Delaughter's person and his truck were searched for drugs and other contraband prior *753 to the drug buy. The record also shows that Delaughter was constantly followed by agents after the buy. Delaughter testified to placing the cocaine on his truck console after purchasing it from Blanton and that it remained there until removed by Cowan. Since Blanton offered no evidence of probable tampering, this cannot be considered a break in the chain of custody. Id. Blanton makes much of Agent Cowan's admission that he could not remember whether he or another agent actually recovered the cocaine from Delaughter's truck. However, Delaughter confirmed that it was Cowan who removed the cocaine, and there is no dispute that it was Cowan who sealed the rock of crack cocaine in an evidence bag. While Blanton is correct that the officer who transported the cocaine to the crime lab did not testify, the Mississippi Supreme Court has held that this does not qualify as a break in the chain of custody. "[T]his state's law has never required a proponent of evidence to produce every handler of the evidence." Ormond v. State, 599 So.2d 951, 959 (Miss. 1992). The record shows that when the cocaine was received by the crime lab, it was still inside the heat sealed evidence bag. Since the record reveals no evidence of probable tampering with the evidence, there was no abuse of discretion in the trial court's denial of Blanton's motion for a directed verdict. As such, we find no merit to this assignment of error.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, PAYNE and SOUTHWICK, JJ., CONCUR.