951 So.2d 575 (2006)
James SHANKS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01958-COA.
Court of Appeals of Mississippi.
September 5, 2006.
Rehearing Denied March 13, 2007.
*576 Sharon D. Henderson, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
*577 Before KING, C.J., SOUTHWICK and IRVING, JJ.
SOUTHWICK, J., for the Court.
¶ 1. James Shanks was convicted by a Jones County Circuit Court jury of the crime of possession of marijuana. On appeal, he argues there were prejudicial trial errors. He also contests the weight and sufficiency of the evidence. We find no error and affirm his conviction and sentence.

FACTS
¶ 2. On March 9, 2005, Malcolm Bounds, a narcotics officer with the Laurel Police Department, was contacted by a FedEx office in Phoenix, Arizona about a package en route to Laurel that might contain an illegal substance. The record does not indicate the source of the information from the Arizona FedEx office. Bounds intercepted the package when it arrived at a FedEx distribution facility in Hattiesburg, Mississippi. A drug dog indicated the presence of illegal drugs. Bounds and other officers opened the package and discovered a large amount of marijuana. The package was addressed to David Drummond and the sender was listed as Roy Shawn Drummond. The residence for delivery was owned by a Daphne Drummond. A search of Laurel public records did not contain a person by the name of David Drummond. Nobody by that name would ever be identified.
¶ 3. Bounds organized a controlled delivery conducted by Laurel police and one out-of-town officer. The out-of town-officer, David Stringer, posed as a FedEx deliveryman. Stringer was accompanied in the delivery van by a Laurel police officer. Bounds and other officers involved were positioned close to the residence but could not see the delivery transaction from their position. Officer Chris Flowers testified that after Stringer knocked on the door and Shanks came out of the residence, Stringer set the package down. Flowers then testified that Shanks picked the package up, looked at it briefly, set it back down, and signed the receipt form prior to being arrested. Flowers could not hear the conversation between Stringer and Shanks.
¶ 4. Stringer testified that he placed the package on the ground in the carport and asked Shanks to inspect the package to make sure it was not damaged. This was done to get Shanks out of the house and to prevent the package from being taken into the house. Shanks "picked it up briefly," said "okay," and set it back down. Shanks then signed for the package using the alias of Joe Harris. He was immediately arrested. Evidence was presented that Shanks received two phone calls from Arizona on his cell phone, one on the day the drugs were shipped and the second on the day the package arrived. Shanks was at the delivery address at the time the package was scheduled for delivery and knew the occupant of the house would not be home.

DISCUSSION
ISSUE 1: Weight and sufficiency of the evidence
¶ 5. Shanks argues that the jury verdict was against the weight of the evidence because nothing supports that Shanks was aware of the contents of the package. He also argues that he was never in possession of the drugs. Though expressed in terms of the weight of evidence, Shanks challenges the denial of his motion for directed verdict of acquittal. A motion for directed verdict argues against the sufficiency, not the weight of the evidence.
*578 ¶ 6. In reviewing the denial of a motion for directed verdict, an appellate court must examine all of the evidence before the trial court from a perspective that is favorable to the State. Shaw v. State, 915 So.2d 442, 448 (Miss.2005). The objective is to determine whether a jury could not have found an accused guilty even with all the reasonable inferences in favor of guilt that could have been derived from the evidence. Id. at 448-49.
¶ 7. Under the indictment the prosecution had to prove that Shanks feloniously and knowingly possessed more than one kilogram but less than five kilograms of marijuana. Possession requires that an accused be "aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." Kerns v. State, 923 So.2d 196, 199-200 (Miss.2005) (quoting Curry v. State, 249 So.2d 414, 416 (Miss. 1971)). The possession may be actual or constructive. Id. Constructive possession arises from "dominion and control" over drugs and requires "incriminating circumstances" to connect an accused to the substance. Id. Proximity alone is not sufficient evidence to prove possession. Id.
¶ 8. Shanks seeks reversal because of precedents in which a defendant could not be convicted where contraband was discovered near the accused and also near other people, without any evidence that the defendant had touched the contraband and it also was not on the defendant's property. Martin v. State, 804 So.2d 967, 969-70 (Miss.2001). Shanks also relies on caselaw that an accused must be acquitted if contraband is found on premises that the accused does not exclusively possess and there is no competent evidence to connect the contraband to the accused. Fultz v. State, 573 So.2d 689 (Miss.1990); Pool v. State, 483 So.2d 331 (Miss.1986). Shanks argues that since he was not the owner of the property upon which the drugs were located, no presumption arises that he exercised dominion and control over them.
¶ 9. Shanks would have us reverse because he may simply have been at the residence, accepted a package on behalf of the owner with the same last name as the addressed recipient, and had no knowledge of the contents and thus no knowing possession of contraband. Looking at all reasonable inferences of knowing possession, however, we find several incriminating facts presented to the jury. Incrimination begins with Shanks's presence at a residence that was not his own at a time that that the package was to be delivered. Shanks testified that he was there to spend time with a girl. However, he was alone when apprehended. Shanks received calls on his cell telephone from the location where the drugs were shipped. Shanks signed for the package by using a fake name. Shanks explained that he used that name in an effort to conceal his presence at the Drummond residence from another girlfriend. However, Shanks did not try to conceal his vehicle that was parked in the driveway in front of the residence. There was no evidence that the name of the sender, Roy Shawn Drummond, or of the recipient, David Drummond, were those of actual people.
¶ 10. Permissible inferences from the facts are these. Shanks was at the residence to receive a package of drugs; he had been notified that the drugs were to arrive at a specific time in the two phone calls he received from the shipment location in Arizona. He used a false name to sign for the delivery because of his knowledge of the criminal nature of the contents. It was not reasonable for a person to be concerned that FedEx would somehow notify a girlfriend of his signature on a package receipt, making his explanation incriminatingly false. Shanks possessed the *579 package by taking delivery. These factors support the jury's conclusion that Shanks exercised dominion and control over the package knowing the package contained the drugs. We find that a view of the evidence in the manner consistent with the verdict, making all reasonable inferences in favor of that verdict, allows this conviction to stand.
ISSUE 2: Jury Instructions
¶ 11. Shanks argues that the trial court erred in refusing to give certain jury instructions he requested. A total of four jury instructions were given. Two of the instructions were given by the court dealing with deliberations on a verdict and the proper form of the verdict. The State's sole instruction explained the elements of the charge. This instruction also stated that "if the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty. . . ." The sole defense instruction given discussed "reasonable doubt" and that the proof must show more than a probability.
¶ 12. Shanks argues that some of his proposed instructions were vital because they gave a more complete definition of the elements of the charge. Shanks places much significance on jury instruction D-7, which the court rejected. The relevant portion of the proposed instruction states:
To constitute possession, there must be sufficient facts to warrant a finding beyond a reasonable doubt that the Defendant was aware of the presence and character of the particular substance, in this case, marijuana, and was intentionally and consciously in possession of it. Where the particular substance is not in the actual physical possession of the Defendant, there must be sufficient facts to establish beyond a reasonable doubt that the substance involved was subject to the Defendant's dominion or control.
Shanks argues that he was convicted based on constructive possession. The prosecution argued that Shanks was in actual possession of the package and that he knew the contents of the package. The State argues that proposed defense instruction D-7 would have been to Shanks's disadvantage because the jury needed to find actual possession.
¶ 13. Instructions D-5 and D-6 elaborated on the elements of the crime. Through the State's instruction, jurors were told that Shanks must have knowingly possessed the drugs, meaning that Shanks must have known that drugs were inside the package. Instruction D-6 repeats that guidance and therefore would not have been helpful to the jury. Instruction D-5 gave an accurate definition of what possession must entail, including the key requirement for conviction that the jury must find that "Shanks knew that it was marijuana."
¶ 14. On review for error, the jury instructions given are to be read as a whole. Johnson v. State, 908 So.2d 758, 764 (Miss.2005). When the given instructions explain the law fairly and no injustice is created, there is no error. Id. A trial court does not need to give redundant jury instructions. Swann v. State, 806 So.2d 1111, 1117 (Miss.2002). The jury was instructed on the requirement that Shanks have knowing possession of the contraband. There is no merit to the argument that additional explanations of the knowledge needed for possession had to be given.
ISSUE 3: Prejudicial Statements
¶ 15. Shanks argues that the prosecution engaged in misconduct by making prejudicial statements which include referencing the drugs as "that big ole box of dope," and certain statements made in the *580 closing argument. The prosecution in closing said:
[Y]ou know, I'm sorry, but I didn't wake up over there in California or Michigan or somewhere. I'm just a red neck from right out around Indian Springs, and all I know is. . . .
¶ 16. Defense counsel objected to this as unnecessary extemporaneous material, but the objection was overruled. The prosecution continued:
All I know is that water don't flow uphill. You know, we learn little old things like that. And if somebody believed that cock and bull story of this guy, well, you know, all I can say is turn him aloose. You know, this crap right here, look at all that. That stuff destroys communities. It destroys families, children. I mean, God knows, maybe some of you or whateveryou know, I hope not, but, you know, we have people that we know that's been touched by that stuff, whether it's that or some other drug. That's why it's against the law to sell it, whether we like it or not. And it ought to be. . . .
Now, this ain't California, you know. You can get your fancy lawyers here, there and everywhere, you know. But this ain't California. . . .
¶ 17. The Supreme Court has held that a prosecution closing argument will cause reversal if the "natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the" created prejudice. Flora v. State, 925 So.2d 797, 812 (Miss.2006). That standard gives prosecutors considerable leeway. Prosecutors must not engage in arguments that are "inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." Id. The objective of controlling prejudicial statements is to keep the focus of jurors on the evidence and to discourage appeals to jurors to vote as members of the community, the effect of which is to create a reluctance to acquit even if the evidence is weak. The key issue in reviewing alleged prosecutorial misconduct during closing arguments is whether the statements denied a defendant a fair trial. Walker v. State, 913 So.2d 198, 240 (Miss.2005).
¶ 18. Shanks labels part of the prosecutor's statement as a version of a "send a message" argument. Such arguments indirectly express that the jury should decide guilt or innocence either to intimidate others who might be inclined to commit crime or, sometimes, to please the community. "Send a message" arguments are improper but will not cause reversal if the reviewing court determines that it is "clear beyond a reasonable doubt, that absent the prosecutor's comments, the jury could have found the defendant guilty." Spicer v. State, 921 So.2d 292, 317 (Miss. 2006).
¶ 19. The first disputed portion of the argument was a reference to the package as a "big ole box of dope." Evidence was presented that a box of marijuana was delivered to the accused. The prosecutor's flippant description of that event did not affect the fairness of the trial.
¶ 20. Other statements in the closing argument encouraged jurors to consider this a serious crime. Among the ways in which this point was made was in stating that marijuana "destroys communities. It destroys families, children. I mean, God knows, maybe some of you or whatever you know. I hope not, but, you know, we have people that we know that's been touched by that stuff, whether it's that or some other drug. That's why it's against the law to sell it, whether we like it or not."
*581 ¶ 21. The statements made by the prosecution, while a bit rambling and tending to bring in extraneous considerations, largely were focused on the need to consider that drugs were dangerous and possession should be a crime, even if citizens in some other named states did not think so. The evidence offered to support conviction was of a person signing for delivery of marijuana, without any evidence that he was otherwise involved in the drug trade. The State may have believed some jurors might not have been as concerned about a crime such as this as they should be.
¶ 22. We do not find that the challenged arguments to be in the "send a message" category. We also do not find that the statements interfered with the fairness of the trial.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION FOR POSSESSION OF MARIJUANA, MORE THAN ONE KILOGRAM BUT LESS THAN FIVE KILOGRAMS, AND SENTENCE OF TWENTY-FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.