MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. William (Bill) Harris Sr. was found guilty in the Sharkey County Circuit Court of the sale of cocaine in violation of Mississippi Code Annotated section 41-29-139(a) (Rev.2009). Harris was sentenced to twenty years, with fifteen years to serve and five years of post-release supervision; he was ordered to pay a $5,000 fíne, $1,000 to the victim’s compensation fund, $156 in court costs, and $166.50 in state assessments. Harris timely appeals his conviction asserting that: (1) the trial court erred in denying him a continuance after the State’s discovery violations; (2) the trial court erred by failing to declare a mistrial on its own motion based on the State’s improper remarks during closing argument; and (3) he was denied effective assistance of counsel. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 2. On March 2, 2007, Willie Cooper, a confidential informant (Cl), who was working for the Mississippi Bureau of Narcotics (MBN), met with three agents from the MBN at a location in Rolling Fork, Mississippi. Cooper told the agents that he could buy “crack cocaine” from Harris, who was an acquaintance of his. The agents had Cooper place a telephone call to Harris, which the agents recorded. During the conversation, Cooper identified himself to Harris and told Harris that he wanted “a hundred,” to which Harris replied, “All right.” Cooper then told Harris he would meet him at the “store.” The agents conducted a thorough search of Cooper and his vehicle for anything that might compromise the investigation, and they then equipped Cooper with a “body wire” and a miniature digital camera, which was placed in the front part of Cooper’s jacket. The agents issued Cooper two one-hundred-dollar bills that were to be used in the drug transaction. Cooper got into his vehicle and drove to Harris’s store, L & B Grocery, in Anguilla, Mississippi. The agents followed in separate vehicles, staying close enough behind Coo
 
 *1239
 
 per to hear what was being transmitted through Cooper’s body wire.
 

 ¶ 3. The video footage recorded by the camera in Cooper’s jacket showed Cooper enter the store, approach Harris, who was standing behind the store’s counter, and place money on the counter in front of Harris. The video footage next showed Harris reach into his pants’ pocket. At that moment, the camera angle moved slightly away from Harris, and the video failed to show what Harris did next. Cooper’s body wire also failed to record any discernable conversation between Cooper and Harris while Cooper was inside the store. According to the written statement Cooper provided shortly after the drug buy, Cooper placed the two hundred dollars given to him by the agents on the counter in front of Harris. He said Harris then removed a plastic bag from his pants’ pocket and counted what was inside the bag. According to Cooper, Harris only had one hundred dollars’ worth of “crack cocaine” available. Cooper said Harris then handed him a plastic bag along with one of the one-hundred-dollar bills that Cooper had previously laid on the store’s counter. Cooper then left Harris’s store and returned to his vehicle where he displayed the plastic bag he. said he had received from Harris. Cooper displayed the plastic bag so it could be recorded by the video camera; the video showed the plastic bag to contain a white substance.
 

 ¶ 4. Cooper drove back to the “pre-buy” location followed by the agents. There, Cooper handed the agents the plastic bag he had received from Harris, along with the one-hundred-dollar bill he said Harris had returned to him. The agents placed the plastic bag into an evidence bag, sealed it, and had Cooper initial it. The evidence bag was transported to the Mississippi Crime Laboratory, where the “rock-like substance” enclosed inside the bag was tested. The tests revealed that the substance contained nine-tenths of a gram of cocaine.
 

 ¶ 5. Harris was later indicted by a grand jury in April 2008 for the sale of cocaine. Harris’s attorney requested all allowable discovery under Rule 9.04 of the Uniform Rules of Circuit and County Court. The State timely provided Harris a copy of the recorded video along with a copy of Cooper’s written statement which described Cooper’s version of events before, during, and after the drug buy on March 2, 2007. The video did not show Cooper’s face, and Cooper’s name was redacted from the written statement.
 

 ¶ 6. On Wednesday, September 17, 2008, five days before trial began on September 22, the State provided Harris the audiotapes and a list of witnesses the State intended to have testify at trial; Cooper’s name was included therein. Friday evening, Harris’s defense counsel filed a motion in the circuit court seeking a continuance or, in the alternative, suppression of the audiotapes and Cooper’s testimony. The motion was heard by the trial judge on Monday morning prior to jury selection.
 

 ¶ 7. Harris’s attorney, who told the trial judge that he had to travel out of town on Wednesday to attend a conference, acknowledged receiving the audiotapes from the district attorney’s office prior to leaving town. He claimed, though, that he did not learn the name of the State’s chief witness, Cooper, until Friday when he returned from his trip and saw the State’s list of witnesses on his fax machine. The State, apparently, had faxed the list on Wednesday after Harris’s attorney had left his office. Harris’s attorney argued that because the State had failed to turn over the audiotapes and disclose the name of Cooper in a timely manner, Harris was entitled either to a continuance or the court should not allow the State to use the
 
 *1240
 
 audiotapes or Cooper’s testimony at trial. In response, the prosecutor stated that his office identified the existence of the audiotapes to Harris on multiple occasions during discovery, but the State withheld furnishing Harris a copy of the audiotapes because the tapes revealed Cooper’s identity. The prosecutor told the trial judge that his office’s practice has been to retain the identity of confidential informants as long as possible to secure their safety. The prosecutor claimed that he had good reason to withhold Cooper’s identity in this instance because his office had been informed by someone (the record does not say who) that death threats allegedly had been made against Cooper. The prosecutor told the trial judge that he did not have enough evidence to substantiate such threats, but he reasoned that the allegation alone justified his decision not to disclose Cooper’s name and address earlier during discovery.
 

 ¶ 8. The trial judge acknowledged the State’s concern, and he found that the State had noticed Harris’s counsel of the content contained on the audiotapes and of Cooper’s identity on September 17. The trial judge stated that while he understood why the State did not want to provide a copy of the audiotapes earlier, the State should have at least provided Harris with a transcript of the recorded conversation, and he admonished the State to do so in the future. The trial judge then decided that he first would proceed with jury selection, afterwards he would provide Harris’s attorney time to review a report on Cooper from the National Crime Information Center (NCIC),
 
 [1]
 
 which the State had obtained earlier that morning, and he would also provide defense counsel an opportunity to interview Cooper. The trial judge instructed Harris’s counsel to inform the court if Cooper disclosed any new information during the interview that deviated from Cooper’s previous written statement and the court would then make a determination as to its prejudicial effect. As to the audiotapes, the trial judge wanted to hear them for himself before making a ruling.
 

 ¶ 9. The jury was selected and then dismissed for the day, after which the trial judge listened to the audiotapes. The trial judge found the content contained on the audiotapes corroborated what the agents and Cooper were going to testify at trial. The trial judge acknowledged that a discrepancy existed between Cooper’s written statement and the audiotapes. He noted that in Cooper’s written statement, Cooper stated that during the phone conversation he said to Harris that he wanted purchase “$100 worth of crack cocaine”; however, the audio recordings contained no mention of what Cooper wanted to purchase. But in the trial judge’s opinion, the fact that the audio recordings contained no mention of any illegal substance actually benefitted Harris’s defense. The trial judge found that Harris was unable to demonstrate any prejudice by unfair surprise and overruled Harris’s motion to suppress the audiotapes.
 

 ¶ 10. The record reveals that Harris’s counsel thereafter interviewed Cooper at length. The record contains no indication that defense counsel reported any of his findings from said interview back to the trial judge.
 

 ¶ 11. Testimony began the following morning. The State presented testimonial evidence from Cooper, two of the MBN agents involved in the case, and the foren
 
 *1241
 
 sic scientist with the crime lab who had analyzed the substance Harris had allegedly sold to Cooper. The State also presented to the jury the audio and videotapes, Cooper’s written statement, and the cocaine that it claimed Harris sold to Cooper.
 

 ¶ 12. During Cooper’s testimony, he told the jury that he was a former “crack addict,” and he disclosed that he had smoked the drug as recently as five months ago. On cross-examination, Cooper stated that the main reason he decided to work for the MBN as a Cl was that it would be a good way for him to quit using cocaine; meaning, Cooper felt that by helping the MBN arrest the drug dealers, he would be unable to buy it. Cooper further testified that he was paid a hundred dollars by MBN for this particular drug buy.
 

 ¶ 13. Harris testified on his own behalf, and he was the only witness who testified during the defense’s case-in-chief. Harris said that he knew Cooper from having seen him “around,” but he claimed that he did not know Cooper personally. Harris denied having ever sold cocaine to Cooper. On cross-examination, Harris admitted that the voice heard on the recorded phone conversation was his. But he told the jury that he believed he was talking to a different Willie Cooper at the time. Harris said the Willie Cooper he thought was on the other end of the conversation was a beer vendor, who calls Harris from time to time trying to sell extra beer to the store. According to Harris, when he heard the individual say a “$100 worth” over the phone, he assumed it was Willie the vendor looking to sell a hundred dollars’ worth of beer. Harris also admitted that he remembered Cooper walking into his store on March 2, 2007, and laying money down on the store’s counter. But Harris denied taking Cooper’s money, and he stated that he did not give Cooper anything out of his pants’ pocket. When asked by the prosecutor if it was normal for customers to walk in Harris’s store and lay money on the counter before buying anything, Harris said that customers often come in, place money on the store’s counter, and then go get whatever store item they want to purchase.
 

 ¶ 14. Following closing arguments, the jury retired to deliberate and subsequently found Harris guilty of selling cocaine.
 

 DISCUSSION
 

 I. Discovery
 

 ¶ 15. Harris reasserts on appeal that the State’s failure to timely provide the audiotapes and the name of its chief witness, Cooper, denied him a meaningful opportunity to prepare for trial. Citing
 
 Box v. State,
 
 437 So.2d 19 (Miss.1983), Harris contends that the trial court erred by denying his motion for a continuance.
 

 ¶ 16. “The decision to grant or deny a continuance is left to the sound discretion of the trial court.”
 
 Stack v. State,
 
 860 So.2d 687, 691 (¶ 7) (Miss.2003) (citations omitted). This Court will not reverse a trial court’s decision to deny a motion for continuance unless the decision appears to have resulted in manifest injustice.
 
 Mosely v. State,
 
 4 So.3d 1069, 1073-74 (¶ 9) (Miss.Ct.App.2009).
 

 ¶ 17. Rule 9.04(A) of the Uniform Rules of Circuit and County Court requires the prosecution to disclose the names and addresses of all witnesses in chief, and any recorded statements made by the defendant and/or witness, proposed to be offered by the prosecution at trial.
 
 See
 
 URCCC 9.04(A)(1) and (A)(2). Rule 9.04(B)(2) speaks specifically to cases involving confidential informants, and it provides that an informant’s identity must be disclosed if a failure to disclose would in
 
 *1242
 
 fringe upon the constitutional rights of the accused or the informant was or depicts himself or herself as an eyewitness to the event or events constituting the charge against the defendant. URCCC 9.04(B)(2). An exception to the rule exists in situations where the trial court finds there is a substantial risk of physical harm or intimidation resulting from such disclosure. URCCC 9.04(B).
 

 ¶ 18. Cooper was the State’s chief witness, and he was the only eyewitness to the alleged drug buy; thus, in accordance with Rule 9.04(A)(1) and 9.04(B)(2), the State was required to disclose his name and address to Harris in discovery. Likewise, the State was required to provide Harris a copy of the audiotapes, which contained statements made by both Cooper and Harris. URCCC 9.04(A)(1) and (A)(2). But the State made an argument in this case that it withheld furnishing Cooper’s name and address, as well as the audiotapes, to Harris earlier in discovery based on a justified concern for Cooper’s safety. Though the trial judge made no on-the-record factual finding with regard to the State’s claim, the trial judge, as mentioned, acknowledged the State’s reason for withholding certain discovery in this instance. Based on our review of the record, we find no abuse of discretion in the trial judge’s implicit decision, particularly in light of his subsequent treatment of the matter.
 

 ¶ 19. Our supreme court has instructed the trial courts to use the following procedure when confronted with a discovery violation, whether it be technical or otherwise:
 

 1)Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
 

 2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
 

 3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
 

 Cole v. State,
 
 525 So.2d 365, 367-68 (Miss.1987) (citing
 
 Box,
 
 437 So.2d 19 (Robertson, J., specially concurring)).
 

 ¶ 20. The trial judge followed this procedure and afforded defense counsel an opportunity to interview Cooper before testimony began the next day. According to the record, defense counsel made no request for a continuance following the interview.
 

 ¶ 21. But Harris contends on appeal that because he was forced to begin voir dire without the benefit of all the discoverable facts, he did not have the ability to voir dire the prospective panel concerning Cooper. We find this argument unavailing.
 

 ¶ 22. First, as found by the trial judge, Harris’s attorney knew of Cooper’s identity, at the latest, five days before trial. Despite Harris’s attorney’s pre-trial assertion that he did not obtain the State’s witness list until the Friday before trial, he admittedly obtained the audiotapes on Wednesday, which the record reveals clearly .disclosed Cooper’s identity. At this point, defense counsel had the same information available to him when he filed his motion Friday evening. Second, the supreme court has held that “an accused’s remedy for tardy disclosure of that to which he was entitled in pre-trial discovery
 
 *1243
 
 is a continuance reasonable under the circumstances.”
 
 Middlebrook v. State,
 
 555 So.2d 1009, 1011 (Miss.1990). The timing of a continuance may vary. In
 
 Foster v. State,
 
 484 So.2d 1009, 1011 (Miss.1986), the supreme court explained that “[b]y no means does this mean invariably that the defendant will be entitled to a continuance until the next term of court[;][t]here will no doubt be cases where postponement of a day or two, or in some cases even an hour or two, will suffice.”
 

 ¶ 23. In
 
 Blanton v. State,
 
 727 So.2d 748, 750 (¶ 8) (Miss.Ct.App.1999), a case somewhat similar to the one before us here, the defendant, Lee Joseph Blanton, moved for a continuance on the first day of- trial claiming that the State had failed to disclose the location of a Cl — the State’s chief witness in the case. The trial judge afforded Blanton an opportunity to interview the Cl after voir dire.
 
 Id.
 
 at 752 (¶ 12). Following the interview, Blanton requested a continuance to investigate information obtained from the interview, which Blan-ton claimed gave him reason to question the Cl’s credibility.
 
 Id.
 
 The trial judge denied the request, and we affirmed, finding that the defendant failed, among other things, to make a factual showing as to how he was prejudiced by the trial judge’s decision.
 
 Id.
 

 ¶ 24. Distinguishable from
 
 Blanton,
 
 Harris made no subsequent request to the trial judge for a continuance following his interview with Cooper. Similar to
 
 Blanton,
 
 Harris has failed to present any concrete facts demonstrating how he was prejudiced by the trial judge’s decision to deny his initial motion for a continuance. In line with this Court’s decision in
 
 Blanton,
 
 we find no per se prejudice with the trial judge’s decision to proceed with voir dire before providing Harris an opportunity to interview Cooper. Taking into consideration the circumstances of this case, the trial court provided Harris a reasonable opportunity to interview Cooper outside the presence of the jury. The record reveals that Cooper was forthcoming at trial as to his reasons for working with the MBN agents, and we find that Harris had enough information in this case to sufficiently attack Cooper’s credibility and trustworthiness. Based on our thorough review of the record, we conclude that it is unlikely a continuance would have resulted in a different verdict.
 

 ¶ 25. As to the audiotapes, we agree with the trial judge’s finding that there was no information contained on the audiotapes that caused Harris any prejudicial, unfair surprise. Most everything on the tapes corresponded to the written statement made by Cooper that was provided to Harris earlier in discovery. The fact that the audiotapes contained no mention of “crack cocaine,” constituted a straight issue of fact for the jury to decide, and the record reveals that Harris’s attorney fully exploited this omission during his cross-examination of Cooper.
 

 ¶ 26. Accordingly, we find that Harris was not unfairly prejudiced in his preparation for trial. This issue is without merit.
 

 II. Closing Arguments
 

 ¶ 27. Harris contends that the prosecutors made what our supreme court has condemningly referred to as “link-in-the-chain” and “send-a-message” comments during the State’s closing argument at trial. Harris argues that although defense counsel did not object to the comments, the comments constitute reversible error under the plain-error doctrine, as they so prejudiced him in the minds of the jury that no reasonable juror could have found him not guilty. In response, the State argues that the comments made by the prosecutors, while close to being improper, do not warrant reversal. The State also
 
 *1244
 
 asserts that defense counsel invited the comments made by one of the prosecutors with remarks defense counsel made during his closing argument.
 

 ¶ 28. According to the record, the following statements were made to the jury during closing arguments by the assistant district attorney, defense counsel, and the district attorney, in respective order:
 

 [Assistant District Attorney]: We’ve all done our part. Law enforcement has done its part here today. The State has done its part. We have all done our part. And now its time, ladies and gentlemen, for you to do your part. It is now time for you to help get the drugs off the street of your community. And its time for you to help get a drug dealer off the streets of your community.
 

 Weigh the evidence for yourself and we are confident that when you do you will find the defendant, [Harris], guilty of selling crack cocaine to [Cooper],
 

 [Defense Counsel]: Now, we submit to you that [Harris] is a citizen of his community. [Harris] is an active member of Rose Hill Church[,] and he is a deacon of that church. And he formerly sang with the Spiritual Crusaders. [Harris] runs a small grocery store. He serves a lot of people in the area. He doesn’t know all of them[,] but a lot of people come in and out of his store. Merchants come in and out of his store. [Harris’s] other job is driving a truck, hauling grain. He does that in addition to working at his store. He is married to [Mrs. Harris] and it will be 20 years married to [Mrs. Harris] next year. And most important, most important, [Harris] says that he did not [sale Cooper] any cocaine. He did not see [sic] it on March 2nd, 2007. He said to the charge of him- selling cocaine, he is not guilty.
 

 [District Attorney]: [Harris] wants you, as a community, because you represent the community, you represent Sharkey County, you represent Anguilla; he wants you as a community of Sharkey County, of the community of the City of Anguilla to believe what he’s done. To believe that when people put a hundred dollar bill on his counter that he just sits there and plays with his fingers. To believe that he gets telephone calls from vendors and he asks them what they want. That is what he wants you to believe. This is your community, your city. This is your decision. You say what happens. That is what happens when you becomes [sic] a juror. You say. Now it is your term [sic] to say. But of [sic] that is the type of activity you want going on in Anguilla, Sharkey County, Mississippi, that is your decision. If it is not then that is your decision too.
 

 [[Image here]]
 

 When you go back to the jury room then you make the decision as a community. You make a decision as a juror if that is the type of activity that you want to be done. This is your community. After you consider that, after you see that the evidence is beyond a reasonable doubt, don’t let your decision be based on bias, on sympathy, you make your decision on the matter. Once you discuss those facts then you come back [sic] a verdict of guilty and find [Harris] guilty of the sale of cocaine.
 

 ¶ 29. Attorneys are given wide latitude in presenting their cases to the jury during closing arguments, “but they are not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.”
 
 Spicer v. State,
 
 921 So.2d 292, 309 (¶ 31) (Miss.2006) (citation omitted). “The objective of controlling prejudicial state
 
 *1245
 
 ments is to keep the focus of jurors on the evidence and to discourage appeals to jurors to vote as members of the community, the effect of which is to create a reluctance to acquit even if the evidence is weak.”
 
 Shanks v. State,
 
 951 So.2d 575, 580 (¶ 17) (Miss.Ct.App.2006). The standard of review that must apply to alleged lawyer misconduct during closing arguments is “whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.”
 
 Spicer,
 
 921 So.2d at 309 (¶ 31) (quoting
 
 Sheppard v. State,
 
 777 So.2d 659, 661 (¶ 7) (Miss.2000)). “Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety.”
 
 Ahmad v. State,
 
 603 So.2d 843, 846 (Miss.1992). Precedent unequivocally holds that the trial judge is in the best position to determine if an objectionable remark has a prejudicial effect and whether a mistrial is warranted as a result.
 
 Johnson v. State,
 
 914 So.2d 270, 273 (¶ 12) (Miss.Ct.App.2005) (citing
 
 Roundtree v. State,
 
 568 So.2d 1173, 1177 (Miss.1990)).
 

 ¶ 30. When reviewing whether an argument at trial constitutes reversible error, our supreme court uses a formula consisting of two threshold inquiries and a two-part test.
 
 Brown v. State,
 
 986 So.2d 270, 276 (¶ 13) (Miss.2008). The first threshold inquiry looks at whether defense counsel properly objected.
 
 See id.
 
 (noting also that the procedural bar in place due to the absence of a proper objection will be lifted where the argument is so “inflammatory” that the trial judge should have acted on his own motion). The second threshold question asks whether it appears, under the circumstances, defense counsel invited the prosecutor’s comments.
 
 See id.
 
 at (¶ 14) (“If so, ... the issue may be waived.”). “Once the two threshold questions are satisfied, ... for a finding of reversible error, the court must determine (1) whether the remarks were improper, and (2) if so, whether the remarks prejudi-cially affected the accused’s rights.”
 
 Id.
 
 at (¶ 15) (citation and internal quotations omitted). “[T]o meet the second prong of the test, ... it must be clear beyond a reasonable doubt that, absent the prosecutor’s inappropriate comments, the jury would have found the defendant guilty.”
 
 See id.
 
 at (¶ 16) (stating that “this amounts to a harmless-error analysis, and [it] is the analysis to be used for the second prong of the
 
 Spicer
 
 test”).
 

 ¶ 31. Harris did not object to any of the comments made by the prosecutors during the State’s closing argument at trial and is, therefore, barred from appealing this issue. While we find the comments stated by both prosecutors improper, we do not find that they interfered with the fairness of Harris’s trial so as to warrant reversal under the plain-error doctrine; nor do we find the remarks so inflammatory that we must hold the trial court in error for not having objected on its own motion.
 

 ¶ 32. Procedural bar notwithstanding, we once again reiterate what our supreme court stated in
 
 Williams v. State,
 
 522 So.2d 201, 209 (Miss.1988), which speaks directly to the comments made in the case before us:
 

 The jurors are representatives of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to “send a message” but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime
 
 *1246
 
 charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.
 

 ¶ 38. The assistant district attorney’s comments in this case are essentially verbatim to some of the comments complained of in the case of
 
 Shelley v. State,
 
 30 So.3d 379, 385 (¶ 21) (Miss.Ct.App.2010), which reads, in pertinent part, as follows:
 

 We did our part, and now it is time for you to do your part. It’s time for you to help us get drugs off our street, to help us get these drugs off the street by getting the criminals that sell the drugs off the streets. We must all do our part.
 

 This Court found these particular comments, along with others made in that case, to be inappropriate.
 
 Id.
 
 at 386 (¶ 24). But we also found that the comments, which were not met with a contemporaneous objection, were not so egregious as to warrant an objection from the trial judge.
 
 Id.
 
 We held that the comments constituted harmless error, concluding that it was clear to us, beyond a reasonable doubt, “that the jury would have found [Jeffrey] Shelley guilty, even absent the improper remarks.”
 
 Id.
 
 at (¶ 26).
 

 ¶ 34. Notably, the assistant district attorney in this case is the same prosecutor who made the above-mentioned improper comments in
 
 Shelley.
 
 The trial in
 
 Shelley
 
 occurred a couple of months before Harris’s trial. In comparing the two respective records, we cannot help but notice a potential habit taking shape in this prosecutor’s mode of argument, which hopefully has been nipped in the bud since our decision in
 
 Shelley.
 

 ¶ 35. We acknowledge that a fine line often exists between the realms of proper and improper argument, and Mississippi case law has not been altogether consistent in providing a clear distinction between the two. But, as we found to be the case in
 
 Shelley,
 
 the comments made by the assistant district attorney in this case clearly crossed the line from acceptable to unacceptable argument. Asking the jury in this case to do their part to get “drugs off the street of [their] community” was improper.
 
 See, e.g., id.
 
 The only question before the jury was whether Harris had committed the crime of selling cocaine on March 2, 2007.
 

 ¶ 36. As to the State’s argument on appeal that defense counsel invited the district attorney’s comments with his own remarks, a fair argument can be made that some of the district attorney’s comments were in response to what defense counsel said during his summation. Harris’s membership in the local community and his faithful involvement with the church, likewise, had no bearing on the question of whether he committed the crime of selling cocaine. On the other hand, one could also argue that defense counsel’s remarks were in response to the assistant district attorney’s comments; thus, it would be unfair to dismiss the district attorney’s improper comments on a finding that he was provoked by defense counsel. But we need not decide which way the pendulum swings in this instance, because we find that the prosecutor exceeded the bounds of whatever leeway he may have had by saying to the jury: “When you go back to the jury room then you make the decision as a community.” Such a statement was in direct contravention of the trial judge’s mandate to the jury prior to the start of closing arguments instructing each juror that he or she must decide the case for himself or herself after impartial consideration of the evidence with fellow jurors. This ex
 
 *1247
 
 perienced prosecutor should have known better.
 

 ¶ 37. Still, we find the prosecutorial misconduct exhibited by both the assistant district attorney and the district attorney in this case to be harmless error. In addition to instructing the jury not to surrender their individual opinions when deciding the evidence, the trial judge instructed the jury to disregard any argument or remark made by counsel for either side that has no basis in evidence. Based on well-settled law, jurors are presumed to follow the instructions given by the court.
 
 Payne v. State,
 
 462 So.2d 902, 904 (Miss.1984).
 

 ¶ 38. Taking into consideration, as we must, the totality of circumstances, we do not find that Harris was denied his right to a fair trial. The strength of the State’s evidence against Harris was such that if the improper comments by both prosecutors were removed, we are convinced beyond a reasonable doubt, that the jury would have reached the same verdict based on the evidence presented at trial. Accordingly, we find this issue is without merit.
 

 III. Ineffective Assistance of Counsel
 

 ¶ 39. Harris contends that his trial counsel’s failure to object to the improper comments made by the prosecutors during closing argument constituted ineffective assistance of counsel.
 

 ¶ 40. In order to demonstrate ineffective assistance of counsel, a defendant must show that his trial counsel’s performance was so deficient as to constitute prejudice.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “In order to make the requisite showing of prejudice, a defendant must show that there is a reasonable probability that but for counsel’s unprofessional errors the result would have been different.”
 
 Fisher v. State,
 
 532 So.2d 992, 997 (Miss.1988) (citing
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052). Further, an appellate court’s review of trial counsel’s performance is highly deferential, “with a strong presumption that [counsel’s] conduct fell within the wide range of reasonable professional assistance.”
 
 Davis v. State,
 
 980 So.2d 951, 955 (¶ 8) (Miss.Ct.App.2007) (quoting
 
 Ross v. State,
 
 954 So.2d 968, 1004 (¶ 79) (Miss.2007)). This includes trial counsel’s choice of whether or not to make certain objections at trial.
 
 Scott v. State,
 
 742 So.2d 1190, 1196 (¶ 14) (Miss.Ct.App.1999).
 

 ¶ 41. While we find the prosecutors’ comments improper and thus objectionable, our standard of review for this type of claim requires us to presume that counsel’s reason in this instance for not entering a contemporaneous objection was part of trial strategy.
 
 Id.
 
 But assuming for the sake of argument that Harris’s counsel’s conduct fell outside the range of reasonable professional assistance, we nonetheless find that Harris has failed to demonstrate the requisite showing of prejudice that resulted therefrom. For the reasons already discussed in the previous issue, we do not find that an objection by Harris’s trial counsel would have changed the outcome of Harris’s trial. Accordingly, this issue is without merit.
 

 ¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF SHARKEY COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $5,000 FINE, $1,000 TO THE CRIME VICTIMS’ COMPENSATION FUND, AND $166.50 IN STATE
 
 *1248
 
 ASSESSMENTS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . The NCIC report noted no prior convictions, only that Cooper had been arrested in 1999 for petty theft.