ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. This appeal is from a conviction in the Circuit Court of Grenada County, Mississippi of Kenneth L. Williams a/k/a Kenny Bell. Williams attempted to represent himself, despite having appointed counsel, and was convicted by a jury on a two-count indictment for the felony possession of cocaine with the intent to sell, transfer, or deliver, and for the possession of a firearm by a convicted felon. Williams was sentenced to twenty years for the drug charge and three years for the firearms charge, and he was ordered to pay a $5,000 fine. Williams raises two issues on appeal: (1) whether he was denied his constitutional right to a fair trial by the admission of evidence of other crimes not charged in Count I of the indictment, and (2) whether he voluntarily and intelligently elected to proceed pro se. Finding no merit in Williams’s assignments of error, we affirm his convictions and sentences.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On June 1, 2005, agents of the North Central Mississippi Narcotics Task Force, the Grenada County Sheriffs Department, and the Grenada Police Department met with Rayford Willis, who was acting as a confidential informant, to orchestrate a controlled buy of illegal narcotics. Willis had informed Deputy Sheriff Chris McCain that he previously purchased crack cocaine from Williams. Willis contacted Williams by phone, and a meeting was arranged to purchase $300 worth of cocaine. The meeting, or buy, was to take place on Camp McCain Road in Grenada County at 3:30 p.m. The telephone call between Willis and Williams was recorded; however, when the tape was examined, only portions of the conversation could be heard or understood.
 

 ¶ 3. After the meeting between Williams and Willis was scheduled, Deputy McCain, accompanied by Officers Garrett Hartley and Jerry Miller, went to a parking lot on Highway 8 East in Grenada, and they waited in a patrol car for Williams to pass. The officers expected Williams to be in an older model white Mercury Grand Marquis. As anticipated, Williams’s car did pass, and the officers stopped the vehicle and asked Williams for his driver’s license. There were three other men in the car with Williams. They were Lawrence Brown, John Henry Parker, and Marcus Watson. Brown was sitting in the front passenger seat; Parker and Watson were in the backseat. After receiving Williams’s consent to search the car, the police recovered an Altoid tin beside the driver’s seat. The Altoid tin contained a single edged razor blade and two rocks of crack cocaine. Williams told Deputy McCain that the can contained 1.0 gram of cocaine. Williams was meticulous concerning his inventory because at trial, the forensic scientist, Erik Frazure, testified
 
 *724
 
 that indeed the amount of crack cocaine in the Altoid tin was exactly 1.0 gram. The officers also found a plastic bag containing 6.7 grams of crack cocaine under the backseat where Watson had been sitting.
 

 ¶ 4. Having been informed that Williams kept a gun under the seat of his car, but not finding it, the police requested that Williams consent to a search of his home. Williams consented and accompanied the police to his home where a .32 caliber revolver was found in a clothes dryer, which was located in his bedroom. Williams was then taken to the county jail where he signed a waiver and admitted that he had received the gun as payment in a previous drug transaction. He also admitted to setting up the drug deal with Willis. Additionally, he explained how he had enlisted Watson to supply the additional drugs needed to complete the drug deal.
 

 ¶ 5. Watson testified that Williams frequently obtained cocaine from him to fill orders, and on that particular night, Watson had 6.5 grams of crack cocaine to supply to Williams so Williams could complete the sale.
 
 [1]
 
 Watson was riding with Williams to the “buy” and was in the process of breaking off some of the crack cocaine to give to Williams, when the police officers stopped Williams’ car. According to Watson, his arrangement with Williams was that Williams found the customers, and Watson supplied the drugs.
 

 ¶ 6. Williams was appointed counsel pri- or to trial.
 
 [2]
 
 However, on the day of trial, after a jury was selected, Williams claimed that he did not “feel that [his lawyer] [was] for [him]” and requested another attorney. Because Williams failed to appear for his trial ten days earlier, the court did not allow a continuance. The trial judge explained to Williams that, although it was his constitutional right to have an attorney, he did not have a constitutional right to come in five minutes prior to testimony being given and request a new attorney. The court noted that Williams’s case had already been pending for two to three years, and, had he been unhappy with his appointed counsel, he could have hired a private attorney before then. Williams was given the choice of proceeding with his appointed attorney or representing himself. He chose to represent himself. The trial judge advised Williams that it was unwise to represent himself and strongly urged him to reconsider his decision. Williams’s attorney was instructed to remain in the courtroom as standby counsel for Williams, and Williams actually consulted with the attorney several times during the trial.
 

 ¶ 7. The jury convicted Williams on both counts. For the drug charge, Williams was sentenced to twenty years in the custody of the Mississippi Department of Corrections and to pay a $5,000 fine. That sentence was to run concurrently with a three-year sentence for the gun charge. The court appointed the Office of Indigent Appeals to represent Williams in any post-trial proceedings and on appeal. The defense filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The post-trial motion was denied. Aggrieved by this decision,
 
 *725
 
 Williams appeals raising the aforementioned issues.
 

 ANALYSIS
 

 I. CONSTITUTIONAL RIGHT TO A FAIR TRIAL
 

 ¶ 8. Following his arrest, Williams was indicted by a grand jury for one count of “wilfully, unlawfully, feloniously, and purposely or knowingly hav[ing] in his possession approximately 1.0 gram[ ] of [cjocaine ... with intent to sell, barter, transfer, manufacture, distribute or dispense....”
 
 [3]
 
 On behalf of the State, Watson, who was in the car with Williams at the time of the arrest, testified that he went with Williams to make the drug sale. Watson testified that he had 6.5 grams of cocaine and that he was attempting to give some of it to Williams so he could “catch the lick.”
 
 [4]
 
 Watson testified that he was in the process of breaking off some of the cocaine when the police stopped Williams’s car, so he hid the plastic bag containing the cocaine under the backseat of the car. When testifying about his relationship with Williams, Watson stated that “if [Williams] needed something, like some drugs or something, [he would] go find it for him and get it and give it to him.” Watson testified that he often provided drugs for Williams before the incident on June 1, 2005, which was the day of Williams’s arrest. This testimony is the crux of the first issue raised in this appeal.
 

 ¶ 9. After the State presented its casein-chief and at the direction of his standby counsel, Williams made a motion for a directed verdict and a motion to exclude all evidence regarding the bag of cocaine, which was retrieved from the backseat of Williams’s car. Williams’s motion to ex-elude the evidence was based upon the premise that his indictment was for possession and intent to sell only one gram of cocaine. He also made a motion that the case be presented to the jury on a possession charge only, claiming that the evidence of intent to distribute had not been proven by the State. Finally, Williams made a motion to exclude any evidence of prior drug sales.
 

 ¶ 10. In response, the State asserted that Watson and Williams were acting in concert to procure the cocaine necessary to make the sale to Willis, and the testimony showed an intent to sell, transfer, and distribute, which was an element of the crime with which Williams was charged. The court questioned the State as to why Williams was not indicted for possession of the larger amount of cocaine, and the State answered that, as to the charge of possession of cocaine with the intent, quantity is not an element. Also, the State asserted that its initial understanding was that Williams possessed one gram of cocaine, but later developments revealed that the 6.7 grams were jointly possessed by both Watson and Williams. The State argued that the direct testimony of Watson established that some of the 6.7 grams of cocaine was intended to be used for the particular sale to Willis arranged by the police. It is evident from the record, the trial judge weighed the probative value of the evidence, as well as discerning whether there was a link connecting the two quantities of cocaine.
 

 ¶ 11. In ruling on the motion for a directed verdict, the court noted that Williams had not made a contemporaneous objection to the admission of evidence relating to the 6.7 grams of cocaine found on
 
 *726
 
 the backseat of Williams’s car, so the court found there to be a waiver on that issue. Also, the court found there was ample evidence to allow the case to go to the jury. Based on those determinations, the court denied Williams’s motion for a directed verdict.
 

 ¶ 12. We now address Williams’s failure to raise an objection to the admission of Watson’s testimony relating to crimes not charged in the indictment. “It is ... incumbent upon counsel at trial to make a contemporaneous argument and/or objection when he believes an error has occurred.”
 
 Stephens v. State,
 
 911 So.2d 424, 432(¶ 18) (Miss.2005). And, “[i]f a contemporaneous objection is not made, an appellant must rely on the plain-error rule to raise the unpreserved argument on appeal.”
 
 Latiker v. State,
 
 918 So.2d 68, 74(¶ 14) (Miss.2005) (citation omitted). “The plain[-]error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice. We apply the plain[-]error rule only when the error affects a defendant’s fundamental rights.”
 
 Id.
 
 (citations omitted).
 

 ¶ 13. We find that the court did not err in allowing evidence of the 6.7 grams of cocaine to be presented to the jury, nor was there a manifest miscarriage of justice. Williams waived his objection to the admission of the evidence relating to the 6.7 grams of cocaine by not raising a contemporaneous objection. Therefore, Williams’s argument is proeedurally barred on appeal. However, we will address the reasons why the court did not err by allowing the evidence to be admitted.
 

 ¶ 14. Mississippi Rule of Evidence 404(b) provides:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.
 
 It may, however, be admissible for other-purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 (emphasis added). We find that Williams cannot claim prejudice under Rule 404(b).
 

 ¶ 15. This Court has held: “In drug cases, ‘evidence of prior acts offered to show intent to distribute is not barred by M.R.E. 404 and is properly admissible if it passes muster under M.R.E. 403 and is accompanied by a proper limiting instruction.’ ”
 
 Nobles v. State,
 
 879 So.2d 1067, 1070(¶ 9) (Miss.Ct.App.2004) (citation omitted) (footnote added). In
 
 Nobles,
 
 “[t]he circuit court conducted a Rule 403 balancing test
 
 [5]
 
 and found that the probative value of the evidence outweighed any potential prejudice, because it showed the existence of a plan and absence of mistake and helped to present ‘the whole picture’ to the jury.”
 
 Id.
 
 (citation omitted). As in
 
 Nobles,
 
 we find that the evidence relating to the 6.7 grams of cocaine was relevant; went to show Williams’s motive, intent, and plan; and helped to paint the whole picture for the jury. Additionally, we do not find that it was cumulative or misleading to the jury.
 

 ¶ 16. To recap, the police were present when Willis called Williams to set up the controlled drug buy; Watson testified that he and Williams had a history
 
 of
 
 selling and distributing drugs together; Watson was in the car with Williams when the
 
 *727
 
 police apprehended Williams; and Watson testified that he had the 6.7 grams of cocaine with him so Williams could complete the crack cocaine sale to Willis.
 

 ¶ 17. We are mindful that “[generally, evidence of a crime other than that charged in the indictment is not admissible evidence against the accused.”
 
 Simmons v. State,
 
 805 So.2d 452, 481(¶56) (Miss. 2001). In
 
 Simmons,
 
 the supreme court stated:
 

 However, where another crime or act is “so interrelated to the charged crime as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences,” proof of the other crime or act is admissible. Proof of another crime or act is also admissible where necessary to identify the defendant, to prove motive, or to prove scienter.
 

 Id.
 
 (citing
 
 Duplantis v. State,
 
 644 So.2d 1235, 1246 (Miss.1994)). “Evidence of other bad acts is admissible in order to tell a complete story to avoid confusion among jurors.”
 
 Id.
 
 at 481 (¶ 56) (citation omitted). Therefore, as in
 
 Simmons,
 
 we find that the evidence of Williams’s involvement with Watson and the 6.7 grams of cocaine was relevant, and the probative value outweighed any prejudice. It simply painted a complete picture of the events surrounding Williams’s arrest. Furthermore, the evidence and testimony were accompanied by a proper limiting instruction to the jury-
 

 ¶ 18. The supreme court has stated, “[tjhe burden should properly be upon the trial counsel to request a limiting instruction.”
 
 Palmer v. State,
 
 939 So.2d 792, 796(¶ 13) (Miss.2006) (citation omitted). Williams met this burden, and the circuit court responded appropriately. Utilizing the jury instructions prepared by Williams’s court-appointed counsel, the court gave the following jury instruction pertaining to Willis’s and Watson’s testimonies:
 

 The Court instructs the jury that evidence of alleged prior drug sales of the defendant may not be considered by you as proof of the defendant’s character or as proof the defendant acted in conformity on the date in question. But it may be considered for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.
 

 The Court instructs the jury that the testimony of Rayford Willis, a confidential informant, should be considered by the jury with great care and caution. You may give it such weight and credit as you believe it is entitled.
 

 Marcus Watson has testified as an accomplice in this case, and the testimony of an accomplice is to be considered with great care and caution. You may give it such weight as you believe it is entitled.
 

 ¶ 19. The record is clear; the circuit court met the requirements set forth by this Court in
 
 Noble.
 
 Therefore, it did not err in allowing the evidence of prior acts, which supported Williams’s intent to distribute the drugs, nor was Williams denied his constitutional right to a fair trial. This issue is proeedurally barred and without merit.
 

 II. ELECTION TO PROCEED PRO SE
 

 ¶ 20. The supreme court addressed the dilemma that can arise when a defendant desires to represent himself or herself, and it stated the following:
 

 An accused ... [places] the trial judge in a difficult situation by insisting on a pro se trial, and, upon conviction, claim[s] that he/she did not have the benefit of counsel and did not knowingly waive counsel. Again, if the court refused to permit an accused to represent
 
 *728
 
 himself/herself, and required him/her to have counsel present the case, the accused could contend that he was denied his/her constitutional right in not being permitted to present his/her defense pro se. In such delicate situations, • the question of counsel waiver must be determined on the facts of each case.
 

 Curlee v. State,
 
 437 So.2d 1, 2 (Miss.1983) (quoting
 
 Matthews v. State,
 
 394 So.2d 304, 311 (Miss.1981)). “The trial court’s decision to allow pro se representation will be disturbed
 
 only
 
 upon a showing of abuse of discretion.”
 
 Metcalf v. State,
 
 629 So.2d 558, 566 (Miss.1993) (citation omitted) (emphasis added).
 

 ¶ 21. As stated, Williams was appointed an attorney who was present and prepared at the beginning of the trial. Williams had already missed one trial date ten days earlier. He did not raise any objection to his attorney until after the jury was selected and the testimony was about to begin. Williams complained that: there was some discovery that his attorney had not shown him until a few days before trial; his attorney had encouraged him to accept a plea deal; and he did not feel that his attorney was for him. The court acknowledged these complaints, as well as Williams’s right to counsel, but admonished Williams that he did not have a right to request new counsel five minutes before testimony was to be given. The court also noted that Williams’s case had been pending for two to three years, thereby providing ample time for Williams to have hired a private attorney.
 

 ¶ 22. The trial judge endeavored to assure Williams that: his court-appointed attorney had argued cases before that court many times; she was competent; and she “[did] a good job.” Furthermore, the trial judge told Williams it was not wise for him to proceed pro se. Unyielding, Williams rejected the advice and went forth without an attorney. At the judge’s i*equest, Williams’s court-appointed attorney remained in the courtroom during the trial and was “present, ready, willing and able to advise, counsel[,] and assist [Williams].”
 
 Curlee,
 
 437 So.2d at 2 (citation omitted). Additionally, numerous times throughout the trial, the judge reminded Williams that his attorney was present and willing to assist him. Indeed, Williams did consult with the attorney several times during the trial, and the court noted that, during one of the breaks, Williams had taken extensive notes from his discussion with the attorney. At the close of testimony, the attorney, on her own volition, approached the bench to discuss the jury instructions that she had prepared for Williams. She requested, and was granted, permission to make a copy of the jury instructions for him. The record indicates that Williams agreed to the jury instructions by his silence during the colloquy between his court-appointed attorney and the trial judge. It is obvious that Williams made a fully informed and voluntary decision to represent himself at trial. Moreover, it is more than apparent that the court went to great lengths to assist Williams throughout the trial. Therefore, we find that the trial judge was within his discretion to deny Williams a continuance to hire a private attorney, and Williams voluntarily chose to proceed pro se.
 

 ¶ 23. This Court has held, “[t]he decision to grant or deny a continuance is made at a trial court’s discretion.”
 
 Salts v. State,
 
 984 So.2d 1050, 1060(¶ 25) (Miss. Ct.App.2008) (citation omitted). In
 
 Salts,
 
 this Court stated that “[i]n order to de1 mand a reversal, a trial court’s denial of a continuance must result in ‘manifest injustice.’ ”
 
 Id.
 
 (citation omitted). And, “[t]he burden of showing manifest injustice is not satisfied by conclusory arguments alone, rather the defendant is required to ‘show
 
 *729
 
 concrete facts that demonstrate the particular prejudice to the defense.’ ”
 
 Id.
 
 We do not find that Williams has presented any “concrete facts” to demonstrate that he was prejudiced by his pro se defense, nor do we find that the trial judge abused his discretion by denying Williams a continuance.
 

 ¶ 24. We now address Williams’s contention that the trial judge failed to comply with Rule 8.05 of the Uniform Rules of Circuit and County Court. Rule 8.05 requires that “[w]hen the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney.” URCCC 8.05. We disagree with Williams concerning the trial judge’s compliance with Rule 8.05.
 

 ¶ 25. Williams asserts that the trial judge was not in compliance with Rule 8.05 because he did not formally state for the record that Williams had knowingly and voluntarily waived his right to counsel by choosing to proceed pro se until it was near the end of the testimony given by the first witness. However, Williams’s own brief to this Court verifies that the trial judge discussed at length Williams’s choice to proceed pro se. Before any testimony was given, the following colloquy transpired:
 

 BY THE COURT: Okay. Mr. Williams, I want to advise you of a few things that I’m required to under Rule 8.05 of the Uniform Circuit and County Court Rules because you have indicated that you do wish to proceed and represent yourself.
 

 So, again, you do have the right to have an attorney, and I had appointed one to you, and you have chosen not to go forward with that attorney. You have the right to conduct your defense, and you may elect to conduct the defense and play whatever role you want to in that defense, but you need to be advised the Court will not relax or disregard the rules of evidence or procedure or courtroom protocol just because you are choosing to represent yourself, and you will be bound by the same rules of evidence and the same rules as the attorneys and will be expected to conduct yourself [accordingly].
 

 These rules of evidence are not [] simple rules. They’re difficult. People go to law school to learn these rules. The fact that you’re representing yourself increases the likelihood that the outcome of this case will not be favorable to you. You understand all those things; is that correct?
 

 BY THE DEFENDANT: Yes, Sir.
 

 BY THE COURT: And you still wish to go forward and represent yourself; is that correct?
 

 BY THE DEFENDANT: Yes Sir.
 

 ¶ 26. It is clear that the trial judge addressed the requirements of Rule 8.05 early in the proceedings. Even though the trial judge did not make
 
 a formal
 
 8.05 declaration concerning Williams’s choice to represent himself until after
 
 some
 
 testimony was given, it is not an error that affected Williams’s fundamental rights. Failure to follow the exact procedure of Rule 8.05, under these facts, is not fatal and amounts, at best, to harmless error.
 
 See Banks v. State,
 
 816 So.2d 457, 460 (¶¶ 12-13) (Miss. Ct.App.2002). A complete review of the record leads us to determine that Williams voluntarily and intelligently elected to proceed pro se. Therefore, we find that the timing of the trial judge’s 8.05 declaration was, if it amounted to error, harmless error.
 

 ¶ 27. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT
 
 *730
 
 OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO SELL, TRANSFER, OR DELIVER AND SENTENCE OF TWENTY YEARS AND CONVICTION OF POSSESSION OF A FIREARM BY A FELON AND SENTENCE OF THREE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $5,000 FINE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
 

 KING, C.J., LEE AND MYERS, PJJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Watson testified that he had 6.5 grams of cocaine, but the forensic scientist testified at trial that the bag actually contained 6.7 grams of cocaine.
 

 [2]
 

 . At least one of Williams's court-appointed attorneys had to withdraw prior to trial because of a conflict of interest due to that attorney’s representation of someone who would testify against Williams. However, Williams had an attorney present and prepared to represent him at trial.
 

 [3]
 

 . Williams was also indicted for possession of a firearm by a felon, but the disputed evidence only relates to the drug charge.
 

 [4]
 

 . Evidently, "catching the lick” is synonymous with selling drugs.
 

 [5]
 

 . Mississippi Rule of Evidence 403 states, "[ajlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”