# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00990-COA

**ZACHARY MINOR**                                                                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                          **APPELLEE**

DATE OF JUDGMENT:                    11/04/2021
TRIAL JUDGE:                         HON. DEBRA W. BLACKWELL
COURT FROM WHICH APPEALED:           ADAMS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: ASHLEY LAUREN SULSER
DISTRICT ATTORNEY:                   SHAMECA SHANTE' COLLINS
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 02/27/2024
MOTION FOR REHEARING FILED:

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1.    Zachary Minor was convicted of possession of marijuana with intent to distribute and trafficking of Tetrahydrocannabinol (THC). The Adams County Circuit Court sentenced Minor to twenty years for trafficking THC, with ten years suspended and ten years to serve, and ten years to serve for marijuana possession, and ordered the sentences to run concurrently in the custody of the Mississippi Department of Corrections (MDOC).

¶2.    After the court denied his motion for a new trial, Minor appealed, asserting claims of (1) insufficient evidence; (2) inadmissible hearsay and violation of the Confrontation Clause; and (3) prosecutorial misconduct. Finding no reversible error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On July 1, 2019, the Mississippi Bureau of Narcotics (MBN) received an anonymous tip that a package of marijuana and edibles were being shipped to an Adams County address. When the package was delivered, agents conducting surveillance of the property observed Minor and Mario Hartwell drive up in a vehicle, with Hartwell's retrieving the package of contraband. Agents confronted the men, and Hartwell took off running. Minor, the passenger, was questioned by agents and arrested. Minor and Hartwell were indicted on two counts of conspiracy, one count of possession of marijuana with intent to distribute, and one count of trafficking THC (200 grams or more). The circuit court granted Minor's motion for a severance.

¶4. Minor's jury trial was held on October 21, 2021.[1] MBN Agent Jerry Stewart testified that the United States Postal Service (USPS) had alerted him that there was a suspicious package from California going to an address in Natchez, Mississippi, but the "recipient was not listed at that address." While agents were conducting surveillance of the house, they noted "a black pickup truck" with two occupants drive by and turn around without stopping. The truck later returned, following a postal worker's dropping off a package. Hartwell, the driver, got out to retrieve the parcel. When MBN agents approached him and identified themselves, Hartwell "dropped the box" and fled.

¶5. The agents then spoke to Minor, the truck's other occupant, and advised him of his *Miranda* rights. Agent Stewart observed that Minor's cell phone was displaying a United

---

[1] According to the order granting severance, Hartwell's trial had been scheduled for one day earlier (October 20).

States Postal Service (USPS) tracking number, and Minor "immediately shut his phone and locked it." Agent Stewart testified that the addressee's name on the package was "Minor." USPS had provided the agent with the package's tracking number, and he testified that it was the same tracking number he had observed on Minor's phone. Agent Stewart noted the package had "[t]he odor of marijuana . . . emitting from the box," and he obtained a search warrant for the box. Inside the box was marijuana and "THC edibles." When asked on cross-examination if the only thing connecting Minor to the package was Minor's presence in the truck, the agent replied that Minor also had the "specific tracking number" for the parcel on his phone. Agent Stewart explained that he had been looking at the tracking number for two days; so he was familiar with the number.

¶6.     Defense counsel then asked if there was any additional evidence tying Minor to the case. When Agent Stewart replied, "His co-defendant," the defense immediately rested and tendered the witness for re-direct examination. The State then asked the agent how Hartwell "tie[d] [Minor] to the case." Defense counsel objected "to any hearsay," but the State argued that defense had "opened the door." The trial court agreed with the State, noting it was "a follow-up question to" the defense's line of questioning. Agent Stewart responded, "The co-defendant indicated this was not the first time that himself and Mr. Minor had did this in the same means and manner." Defense counsel again objected "as to hearsay." Although the State said it would "move on," the prosecutor subsequently asked, "Now, in addition, the co-defendant said this wasn't the first time; is that correct?" Agent Stewart responded, "Yes, sir."

3

¶7.     MBN Agent Martez Simpson testified that he was able to obtain a photograph of a text message on Minor's phone that read, "Let me credit a gram, bro, to Friday, bro." Allison Conville with the Mississippi Forensics Laboratory analyzed the contraband from the parcel. She testified that the "green leafy substance" was 334.58 grams of marijuana. She also found that the snacks (cookies and candy) that were seized contained THC.

¶8.     After the State rested, Minor's attorney moved for a mistrial because the prosecutor had asked the question about Hartwell's out-of-court statement after representing to the court that he would move on from that line of questioning. Defense counsel argued, "This is an out[-]of[-]court statement not subject to cross-examination, and the [c]ourt was about to rule on it and asked counsel opposite what he said, and he said I am moving on." The prosecutor acknowledged that the defense was "partly correct" but asserted that he "never again got into what Mr. Hartwell said." The trial court denied the motion for a mistrial, ruling that the out-of-court statement did "not result in substantial irreparable prejudice to the defendant's case."

¶9.     The defense then moved for a directed verdict. The circuit court granted Minor's motion for a directed verdict as to the two counts of conspiracy but denied the motion as to the remaining counts. Minor elected not to testify.

¶10.    The jury convicted Minor of possession of marijuana with intent to distribute and trafficking THC. On November 4, 2021, the trial court sentenced Minor to twenty years in MDOC's custody for trafficking THC, with credit for time served, ten years suspended, and ten years to serve, followed by five years of formal reporting post-release supervision and five years of informal non-reporting post-release supervision. For the conviction of

4

marijuana possession, Minor was sentenced to serve a concurrent ten-year term in MDOC's custody.[2]

¶11. Minor filed a motion for a new trial, alleging that the trial court made "several erroneous rulings and errors during [the] course of the trial," particularly the purported admission of "hearsay testimony that was allowed over the objection of the Defendant."[3] The court denied the motion. Minor appeals, arguing that prosecutorial misconduct and the admission of hearsay was reversible error and warrants a new trial. He also contends that the evidence is insufficient to support his convictions.

## DISCUSSION

### I. Sufficiency of the Evidence

¶12. Minor's argument concerning the sufficiency of the evidence is that the State failed to show he had "dominion" over the package containing the contraband because the package was never actually in his possession. He contends, "Possession was in the post office employee, then in Mario Hartwell, and finally the police."

¶13. In *Shanks v. State*, 951 So. 2d 575 (Miss. Ct. App. 2006), we addressed this issue in a factually similar case. FedEx alerted police regarding a package from Arizona it suspected contained illegal drugs; so the narcotics officer arranged for a "controlled delivery" at the shipping address. *Id.* at 577 (¶¶2-3). An officer posing as a deliveryman knocked on the

---

[2] The court further ordered that Minor pay a fine in the amount of $5,000, all court costs, and fees, including a $200 prosecution fee. The $5,000 fine is to be paid in full within the five years the defendant is on formal reporting post-release supervision.

[3] Although Minor does not refer to the specific testimony, the State identifies the testimony in its response.

door and placed the package on the ground. James Shanks answered the door and signed for the package using an alias. *Id*. at (¶¶3-4). Shanks was later convicted of possession of marijuana. *Id*. at 577 (¶1). Shanks challenged the sufficiency of the evidence, claiming there was no evidence he was aware of the package's contents or that he actually possessed the marijuana. *Id*. at (¶5). This Court held that there were "several incriminating facts" supporting a "reasonable inference[] of knowing possession," including (1) "Shanks's presence at a residence that was not his own at a time that . . . the package was to be delivered"; (2) Shanks's "receiv[ing] calls on his cell telephone from the location where the drugs were shipped"; and (3) his use of a fake name to sign for the package. *Id*. at 578 (¶9).

¶14.    Like Shanks, Minor was present at a residence that was not his own immediately after the package was delivered.  Further, as the State argues, "[a] rational jury could infer that Minor's close interest in the package proved that he knew what it contained."  In *Guss v. State*, 281 So. 3d 256 (Miss. Ct. App. 2019), this Court found that a defendant's close tracking of the delivery of a package was relevant evidence that he was aware of the package's contents. *Id*. at 258-59 (¶¶10-11).  Guss was tracking the package's shipment progress on his phone, and "text messages clearly indicated that Guss was anxiously awaiting the delivery of the package[.]" *Id*. at 258 (¶10).

¶15.    Here, credible evidence shows that Minor and Hartwell were closely monitoring the package's progress and that the package was addressed to Minor.  Agent Stewart testified that their truck had driven by before the package was delivered, and the men reappeared in the truck following the postal worker's delivery of the package.  Minor had the tracking

6

number on his phone when confronted by agents. *See United States v. Quesada*, 943 F.2d 58, at *2 (10th Cir. 1991) (unpublished) (finding that a "jury could reasonably have found that [the defendant] had constructive possession of . . . cocaine because he had the eleven-digit tracking number which permitted him to claim, and thus exercise dominion and control over, the original package"). The State also proved that Minor had received a text message from someone asking Minor to credit him "a gram," indicating that Minor was involved in the drug trade. All these facts are relevant evidence that Minor was aware of the package's contents.

¶16.    We therefore find the evidence was sufficient to support the convictions.

## II.        Inadmissible Hearsay and the Confrontation Clause.

¶17.    Minor asserts that testimony about Hartwell's statement to Agent Stewart constitutes inadmissible hearsay. We find that the prosecutor's initial question did not necessarily call for hearsay; the State simply asked Agent Stewart, "[H]ow does the co-defendant tie [Minor] to the case?" When defense counsel objected to the question on the basis of hearsay, the trial judge said the defense had opened the door to the line of questioning and "allow[ed]" it. However, "a party cannot 'open the door' to hearsay." *Veazy v. State*, 113 So. 3d 1226, 1233 (¶24) (Miss. 2013).

¶18.    Defense counsel then asserted another hearsay objection in response to Agent Stewart's answer that Hartwell "indicated" he and Minor had done this before "in the same means and manner." The State agreed at that point to "move on," and the court did not rule on the defense's second hearsay objection. Defense counsel did not move for a mistrial.

¶19. The prosecution, however, did not move on. Instead, the State sought to introduce the content of Hartwell's out-of-court statement by asking the witness, "the co-defendant *said* this wasn't the first time; is that correct?" (Emphasis added). Yet defense counsel raised no contemporaneous objection to this particular question or to Agent Stewart's response, "Yes, sir." This Court has held:

> A contemporaneous objection must be made at trial in order to preserve the issue for appeal. *Smith v. State*, 530 So. 2d 155, 162 (Miss. 1988). And an objection or a motion, standing alone, will not preserve the issue for appeal unless the party pursues it to a ruling by the trial court: "It is the responsibility of the movant to obtain a ruling on all motions filed by him, and the failure to obtain a ruling constitutes a waiver." *Clayton v. State*, 893 So. 2d 246, 249 (¶15) (Miss. Ct. App. 2004) (quoting *Martin v. State*, 354 So. 2d 1114, 1119 (Miss. 1978)). Likewise, "[i]t is the duty of a trial counsel . . . to promptly make objections and insist upon a ruling by the trial court." *Keller v. State*, 138 So. 3d 817, 864 (¶ 127) (Miss. 2014).

*Graham v. State*, 264 So. 3d 819, 821 (¶7) (Miss. Ct. App. 2018); *see also Shaheed v. State*, 205 So. 3d 1105, 1112 (¶21) (Miss. Ct. App. 2016) (holding there is "[n]o 'legal rule' requir[ing] a trial judge to exclude hearsay in the absence of an objection"; nor is a trial judge "expected to strike or exclude hearsay sua sponte"). The defense sought no ruling from the trial judge after the State "move[d] on," nor did he make a contemporaneous objection to the State's asking if Hartwell "said this wasn't the first time." It was not until the State had rested its case-in-chief that defense counsel moved for a mistrial on the basis of allegedly inadmissible hearsay. We therefore find this issue was not preserved for appellate review. *See Morris v. State*, 963 So. 2d 1170, 1178 (¶26) (Miss. Ct. App. 2007) (holding that the defendant's failure to make a contemporaneous objection "to hearsay operate[d] as a waiver of the issue on appeal").

8

¶20.    Furthermore, Minor did not contemporaneously raise his argument that this testimony violated the Confrontation Clause until the subsequent motion for a mistrial. Minor has not challenged the court's denial of his motion for a mistrial on appeal. During the agent's testimony, Minor's attorney only asserted a general hearsay objection. "[A] general hearsay objection is insufficient to preserve an alleged Confrontation Clause violation for appellate review." *Daniels v. State*, 242 So. 3d 878, 883 (¶14) (Miss. Ct. App. 2017) (quoting *Anthony v. State*, 23 So. 3d 611, 620 (¶41) (Miss. Ct. App. 2009)).

¶21.    Waiver notwithstanding, while the State's questioning combined with Agent Stewart's reply constituted inadmissible hearsay, we find such error harmless in light of the evidence of Minor's guilt. "The standard for harmless error is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Reid v. State*, 322 So. 3d 468, 472 (¶12) (Miss. Ct. App. 2021) (quoting *Moffett v. State*, 49 So. 3d 1073, 1099 (¶85) (Miss. 2010)).

¶22.    Minor also notes "that there was no instruction given [to] the jury to not consider [the statement] as evidence." However, defense counsel did not request that a written limiting instruction be given. "A trial judge cannot be put in error on a matter which was not presented to him for decision." *Lowe v. State*, 333 So. 3d 626, 633 (¶20) (Miss. Ct. App. 2022).

¶23.    We therefore find no reversible error with the regard to any questioning or testimony referencing Hartwell's out-of-court statement to MBN agents.

### III.    Prosecutorial Misconduct

9

¶24.    Minor contends that several instances of prosecutorial misconduct warrant a new trial.[4]  First, he claims that the prosecution erred in commenting that Hartwell had been convicted for the same crimes.  During the State's closing argument, the prosecutor asserted:

> [Minor] got caught with his buddy, and him and his buddy had all this weed. Him and his buddy had all this THC. *They're guilty of possession of the weed with intent to distribute, and they're guilty of trafficking of the THC* because of the weight, and that's just it.

(Emphasis added).  Defense counsel did not object to the prosecution's statement.  Generally, the failure to object contemporaneously waives appellate review of a claim of prosecutorial misconduct unless "the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion.'"  *Groves v. State*, 360 So. 3d 1012, 1018 (¶16) (Miss. Ct. App. 2023) (quoting *Evans v. State*, 226 So. 3d 1, 31 (¶78) (Miss. 2017)).[5]

¶25.    We note that the State had also asked Agent Stewart if he knew whether Hartwell had been convicted, and the witness replied that he had known about the conviction.  The State concedes "that evidence of Hartwell's convictions was inadmissible."  "Evidence of a co-defendant's guilty plea or conviction is generally inadmissible because such plea of guilty or conviction is no evidence of the guilt of the party being tried."  *Adams v. State*, 350 So. 3d 1116, 1124 (¶22) (Miss. Ct. App. 2022) (internal quotation marks omitted).  However, Minor has made no argument in his brief that this specific exchange constitutes reversible

---

[4] For clarity, we have combined Issues 2 and 3 from the appellant's brief.

[5] This standard-of-review language cited in *Evans* originated from cases concerning improper "send-a-message" closing arguments made by the prosecution.  *See O'Connor v. State*, 120 So. 3d 390, 399-401 (¶¶26, 29) (Miss. 2013) (discussing the "two-prong test, as set forth in *Spicer v. State*, 921 So. 2d 292 (Miss. 2006)," and clarifying that "the 'so inflammatory' standard is the proper threshold inquiry for appellate review").

10

error; he discusses only the State's closing argument remarks. Regardless, the trial court sustained the defense's objection to this remark. "There is no reversible error where the court did all that it was asked to do." *Dukes v. State*, 369 So. 3d 553, 561 (¶31) (Miss. 2023) (quoting *Cotton v. State*, 675 So. 2d 308, 315 (Miss. 1996)).

¶26. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Hampton v. State*, 815 So. 2d 429, 433 (¶16) (Miss. Ct. App. 2002) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2001)). "Where prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow." *Goodin v. State*, 787 So. 2d 639, 645 (¶18) (Miss. 2001). With regard to the prosecution's improper remark during closing argument about Hartwell's guilt, we do not find that the natural and probable effect created unjust prejudice in this instance, particularly because of the evidence of Minor's guilt; therefore, any error was harmless.[6]

¶27. Minor also contends that cumulative instances of prosecutorial misconduct denied him a fair trial, accusing the prosecution of committing "calculated abuses" as part of a "tactical gameplan." For example, he asserts that during opening statements, the State impermissibly commented on Minor's right to remain silent when mentioning that Minor refused to talk to

---

[6] The State further notes that an accomplice instruction was given that informed the jury "that it could convict Minor only if he 'was a participant and not merely a knowing spectator.'"

MBN agents. Indeed, our appellate courts have "held that prosecutors cannot comment on a defendant's decision to assert his constitutional right to remain silent." *McLaughlin v. State*, 338 So. 3d 705, 724 (¶54) (Miss. Ct. App. 2022).

¶28. Minor acknowledges, however, that his attorney did not object to this alleged improper statement. Again, our supreme court has held that while "the failure to object contemporaneously generally waives a claim of prosecutorial misconduct during closing argument," the claim will be reviewed "if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *Ambrose v. State*, 254 So. 3d 77, 129-30 (¶165) (Miss. 2018) (quoting *O'Connor*, 120 So. 3d at 399 (¶26)). "Any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." *Id*. at 130 (¶167). When referencing Minor's refusal to talk with MBN agents, the prosecutor also explained to the jury, " . . . which is his right." In this context, we do not find this comment "so inflammatory" so as to require the court's intervention. Additionally, the trial court later instructed the jury that "[a]rguments, statements and remarks of counsel . . . are not evidence." *See Sullivan v. State*, 281 So. 3d 1146, 1174 (¶92) (Miss. Ct. App. 2019) (finding that "reversal is not required when a jury is properly instructed that statements made by counsel are not evidence").

¶29. Lastly, Minor complains that "the State sought to inflame the passions of the jury[] by questions on the 'edibles' as part of a nefarious design to harm children." The State asked Agent Stewart the following questions:

Q. Agent Stewart, in your experience as an MBN agent, have you seen drugs disguised as candy in the past?

A. Yes, sir.

Q. What is the specific danger of those type items?

A. A lot of times they will be marketed to young children to be honest with you.

. . . .

Q. Have you in your experience ever seen a child that has gotten a hold of some of these drugs that were marketed for them?

A. Yes, sir. I have seen children go to the hospital due to what looked to be candy –

Defense counsel objected to this testimony on the basis of relevance, and the court sustained the objection. *See Williams v. State*, 445 So. 2d 798, 809 (Miss. 1984) (holding that the trial court's "sustaining defense counsel's objections to [the prosecutor's improper] remarks were sufficient to prevent reversible error"). Defense counsel did not request a mistrial or a limiting instruction. "[I]f a trial court sustains an objection to inadmissible evidence, the moving party has a duty to request a limiting instruction, and failure to request the instruction waives the issue." *Snider v. State*, 755 So. 2d 507, 510 (¶7) (Miss. Ct. App. 1999).[7]

¶30. Although the dissent asserts that the cumulative effect of the alleged prosecutorial misconduct warrants reversal and remand for a new trial, we agree with the State that the prosecutor's remarks "did not render Minor's trial unfair or upset the impartial administration

[7] Minor cites no relevant authority to support his argument that these particular remarks by the prosecution warrant a finding of reversible error. *See Keller*, 138 So. 3d at 860 (¶110) (finding "Court has no obligation to address" appellant's allegations of "prosecutorial misconduct" for failure to cite relevant authority).

of justice." We therefore hold that Minor's claims of prosecutorial misconduct do not constitute reversible error.

## CONCLUSION

¶31.  While portions of Minor's arguments regarding the admission of hearsay and prosecutorial misconduct have merit, we conclude that they were either not objected to by the defense or do not warrant a finding of reversible error. Accordingly, we affirm Minor's convictions and sentences.

¶32.  **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.; McDONALD AND SMITH, JJ., JOIN IN PART.**

**LAWRENCE, J., DISSENTING:**

¶33.  I disagree with the majority that the prosecution's improper actions in this case do not require reversal because of harmless error. The prosecution intentionally asked the investigator to relay information concerning the statement Minor's co-defendant made to law enforcement, implied the co-defendant's guilt was evidence of Minor's guilt, relied on and argued this improper evidence during closing arguments, commented on Minor's choice not to speak with the police at the scene of the crime, and asked questions specifically designed to inflame the jury. The fundamental aspects required for a fair trial demand that this Court reverse and remand for a new trial.

**Prosecution's Opening Statement**

14

¶34. Beginning with its opening statement, the prosecution relayed the following to the jury:

> So they go and they talk to Mr. Minor who is sitting in the truck, **and he doesn't want to talk to them** which is his right, but they looked at his phone and guess what was on his phone.  The tracking information for the package.

(Emphasis added).  While the defense did not object to this statement, "the accused's right to be silent [at arrest] is equally as strong as the right not to testify[,] and it is error to comment on either." *Emery v. State*, 869 So. 2d 405, 408-09 (¶17) (Miss. 2004) (quoting *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990)).

**Guilt of Co-Defendant**

¶35. During the testimony of Agent Stewart, one of the investigators in this case, the State asked questions specifically involving Minor's co-defendant, Hartwell, whose trial had been severed.  That exchange proceeded as follows:

> Q.  [The defense] asked you a question, and I don't know if he got the right answer so I'm going to follow up on it.  He asked you what else ties him to the case, and you said his co-defendant.
>
> A.  That's correct, sir.
>
> Q.  **How does his co-defendant tie him to the case?**
>
> BY [THE DEFENSE]:  Your Honor, I'm going to object to any hearsay.
>
> BY [THE STATE]:  Your Honor, he opened the door.
>
> BY [THE DEFENSE]:  I did not open that door.[8]
>
> BY THE COURT:  You did open the door . . . . You asked the

---

[8] The majority correctly recognizes that a party "cannot open the door to hearsay." *Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984) (internal quotation mark omitted).

|  | witness what else tied your client to this case to which Mr. Stewart said his co-defendant. So this is a follow-up question to that. The Court is going to allow it. |
|---|---|
| BY [THE STATE]: | Tell me how the co-defendant ties him to the case. |
| A. | **The co-defendant indicated this was not the first time that himself and Mr. Minor had did this in the same means and manner.**[9] |
| BY [THE DEFENSE]: | Your Honor, I'd object as to hearsay. He can testify that -- any other way. He's trying to go to the proof -- truth of the matter asserted, not what was actually -- (pause) |
| BY THE COURT: | [Response]? |
| BY [THE STATE]: | **I'll move on, Your Honor.** Now, in addition, **the co-defendant said this wasn't the first time; is that correct?**[10] |
| A. | **Yes, sir.**[11] |

---

[9] Not only is this testimony hearsay and evidence that Minor could not confront, as required by the Mississippi and United States Constitutions, the testimony is also evidence of other wrongs prohibited by Mississippi Rule of Evidence 404. The State did not argue or proffer that this evidence met any exceptions under Rule 404(b).

[10] Despite lulling the judge and the defense attorney into not suspecting any future inquiry into the evidence at issue by indicating she would move on, the prosecutor went back to the question.

[11] The majority contends that Minor failed to preserve this issue on appeal because he "raised no contemporaneous objection to th[e] particular question or to Agent Stewart's response[.]" "[I]f a contemporaneous objection is not made, an appellant must rely on the plain-error rule to raise the unpreserved argument on appeal." *Williams v. State*, 20 So. 3d 722, 726 (¶12) (Miss. Ct. App. 2009) (quoting *Latiker v. State*, 918 So. 2d 68, 74 (¶14) (Miss. 2005)); *see also White v. State*, 228 So. 3d 893, 908 (¶41) (Miss. Ct. App. 2017) (explaining that "because the State's comments resulted in a manifest miscarriage of justice and a violation of [the defendant]'s constitutional rights of due process and fair trial by an impartial jury, this Court examines the comments under plain-error review). "We apply the plain-error rule only when the error affects a defendant's fundamental rights." *Id.*

(Emphasis added).

¶36. The question Minor's counsel asked Agent Stewart about the evidence that tied Minor to the crime did not open the door for every piece of inadmissible evidence. Minor had no opportunity to cross-examine Hartwell on the statement Stewart alleged Hartwell made, resulting in a violation of the Confrontation Clause. *See* U.S. Const. amend. VI; Miss. Const. art. 3, § 26. Indeed, violations of the Confrontation Clause are violations of fundamental and substantive rights. *Bufford v. State*, 191 So. 3d 755, 760 (¶18) (Miss. Ct. App. 2015) (quoting *Ezell v. State*, 132 So. 3d 611, 612 (¶3) (Miss. Ct. App. 2013)). I would find that a manifest miscarriage of justice resulted from the testimony.

**Inflammatory Questioning**

¶37. Contributing to cumulative error, the prosecution also elicited testimony intended to inflame the jury, specifically:

Q. Agent Stewart, in your experience as an MBN agent, have you seen **drugs disguised as candy in the past?**

A. Yes, sir.

Q. What is the specific danger of those type items?

A. A lot of times they will be **marketed to young children** to be honest with you.

Q. Do grown folks need their drugs disguised for them?

A. No, sir.

Q. Have you in your experience ever **seen a child that has gotten ahold of some of these drugs** that were marketed for them?

A. Yes, sir. I have seen children go to the hospital due to what looked to

17

be candy –

| | |
|---|---|
| BY [THE DEFENSE]: | Your Honor, object to relevance. |
| BY [THE STATE]: | Your Honor, it's relevant because these products are marketed in that way, and this is the evidence that the -- they retrieved from the defendant. It's relevant. |
| BY [THE DEFENSE]: | More prejudicial than probative. |
| BY THE COURT: | The Court is going to sustain the objection.[12] |

¶38.    "In a criminal case, the district attorney should be careful not to indulge in personal abuse or vilification of the defendant and should not appeal to passion and prejudice." *White*, 228 So. 3d at 911 (¶54) (quoting *Stewart v. State*, 263 So. 2d 754, 758-59 (Miss. 1972)). "It is improper for [the prosecutor] to indulge in intemperate characterization, personal abuse, or vilification of the accused, tending solely to arouse or to inflame the passion and prejudice of the jury against him, even where such comments are to some extent supported by the evidence." *Id*. (quoting *Craft v. State*, 226 Miss. 426, 434, 84 So. 2d 531, 534-35 (1956)). Here, the prosecutor intimated that the drugs Minor was charged with possessing could have been marketed to children without any evidentiary basis for such an assertion.

**Closing Statement**

¶39.    Finally, the State argued the following before the jury during its closing statement:

> The question to be answered by the jury is -- what it boils down to [is] whether or not Mr. Minor actively participated with Mario Hartwell, the other person involved in this thing, to possess this marijuana and all this THC, and the jury

---

[12]    There was no evidence that had even remotely indicated the defendant "marketed" drugs to "children." While the objection was correctly sustained by the court, it certainly had the potential to inflame or prejudice the jury.

18

instructions that the Judge read to you make abundantly plain that **Mario Hartwell is criminally liable for what Mr. Minor did** and **likewise Mr. Minor is criminally liable**. He's guilty here today because of his cooperation and participation, his joining in with Mario Hartwell. So that every act Mr. Minor did, Hartwell is liable for. **Every act that Hartwell did, Mr. Minor is responsible for**, and it's really quite easy to consider the facts in this case.

. . . .

**Isn't it amazing that as soon as [Agent Stewart] started saying what Mario said he objected**. If you want to know[,] what are you objecting to[,] **you guys knowing about it.** He doesn't want to know what Mario said because what Mario said was, hey. We've done this several times. That's what he said and you heard Agent Stewart say he said that. And let me say this, ladies and gentlemen[,]

BY [THE DEFENSE]:      Your Honor, I object.

BY THE COURT:          Your objection will [be] noted. This is closing argument. Proceed[.]

. . . .

He got caught with his buddy, and *him and his buddy had all this weed.* Him and his buddy had all this THC. ***They're guilty* of possession** of the weed with intent to distribute, **and *they're guilty* of trafficking** of the THC because of the weight, and that's just it.

¶40. When this Court reviews alleged improper statements by counsel, we are permitted to reverse "if the attorney's statement was so inflammatory that the trial judge should have objected on his own motion." *McCoy v. State*, 147 So. 3d 333, 344-45 (¶29) (Miss. 2014) (quoting *O'Connor v. State*, 120 So. 3d 390, 399 (¶23) (Miss. 2013)). While attorneys are given "wide latitude" when arguing cases before a jury, "prosecutor[s are] not permitted to use tactics which are inflammatory, highly prejudicial and reasonably calculated to unduly influence the jury." *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995) (quoting *Ivy v. State*,

19

589 So. 2d 1263, 1266 (Miss. 1991); *Acevedo v. State*, 467 So. 2d 220, 226 (Miss. 1985)). That is precisely what was done in this case. The appellate courts of this State have held that "evidence of a co-defendant's guilty plea or conviction is generally inadmissible because such plea of guilty or conviction is no evidence of the guilt of the party being tried." *Foxworth v. State*, 96 So. 3d 17, 19 (¶8) (Miss. Ct. App. 2011) (quoting *Buckley v. State*, 223 So. 2d 524, 528 (Miss. 1969)). The State clearly argued in closing that "they," meaning Minor and Hartwell, were guilty despite Hartwell's guilt not being an issue before this jury and when such evidence has clearly been prohibited by previous rulings of the appellate courts of this State.

¶41. "Trials are often chaotic and sometimes intensely adversarial. The Rules of Evidence are designed to bring order and fair play to the trial process." *Richards v. State*, 283 So. 3d 1151, 1158 (¶18) (Miss. Ct. App. 2019). Here, the State went beyond acceptable trial tactics and brought legal chaos to Minor's trial by continuously violating principles of law designed to ensure a fundamentally fair trial.

¶42. Prosecutors in every circuit district of this state provide a service to the community that is often given minimal notice or appreciation. Most prosecutors do their job not for recognition or praise but as a public service because they believe in the important role they play in our criminal justice system. It has long been stated by courts throughout our history that we are a society of law and order and are all expected to comply with the law in the interest of promoting the general public safety. No individual is held to account for violating that public safety without the work of a prosecutor. They often respond early to scenes of

20

unimaginable violence like first responders and then work to determine how to present those scenes to a jury within the parameters of the Rules of Evidence and the legal precedent of our courts. Those hours preparing for pleas and trials alike are long and laborious but accepted as part of the job.

¶43.   The United States Supreme Court clearly defined the unique role of a prosecutor in our criminal justice system in *Berger v. United States*:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88 (1935). This unique role in our criminal justice system in upholding public safety while ensuring it is done fairly and in compliance with the law calls forth a unique rule of professional conduct. The Mississippi Rules of Professional Conduct demand that prosecutors are not mere advocates for the State but also "ministers of justice." Miss. R. Prof. Conduct 3.8.

¶44.   The appellate courts of this State have never refrained from addressing outrageous and improper conduct by attorneys in our criminal justice system. "The cumulative error doctrine stems from the doctrine of harmless error, which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where

the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Rogers v. State*, 205 So. 3d 660, 664-65 (¶17) (Miss. Ct. App. 2015) (quoting *Thompson v. State*, 990 So. 2d 265, 270 (¶12) (Miss. Ct. App. 2008)).  I believe that the cumulative errors by the State—commenting on a defendant's right to remain silent, intentionally eliciting improper hearsay even after announcing to the court that the prosecution would "move on," asking highly inflammatory questions without any evidentiary basis, and making improper closing arguments—require reversal and remand for a new trial.  Accordingly, I respectfully dissent.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION.  McDONALD AND SMITH, JJ., JOIN THIS OPINION IN PART.**